KOCH v. FOX et al.

(Supreme Court, Appellate Division, First Department. April 18, 1902.)

1. MUNICIPAL CORPORATIONS — ORDINANCE — REGULATING CONSTRUCTION OF BUILDING—LIABILITY OF OWNER.

    The ordinance approved September 25, 1895, as amended November 18, 1895, and continued in force by Greater New York Charter, § 41, providing, under penalties, that "the owner or general contractor engaged in the construction" of a building over five stories in height shall build a temporary roof over the sidewalk in front of the building, does not enlarge the personal liability of an owner employing a general contractor; the contractor being then required to comply with the ordinance, and it being the owner's duty to do so only when the work is done under his charge and control.

2. SAME.

    Conceding that the ordinance imposes on the owner employing a general contractor the additional obligation of erecting the temporary roof over the sidewalk, and renders him liable to the penalty for a violation, it does not create a new cause of action in favor of a party injured through the owner's omission to erect the roof; the purpose of the ordinance being only to prevent accidents, and not to fix liability therefor.

    75 N.Y.S.—58

**8. SAME.**

Conceding that the ordinance imposes on the owner employing a general contractor the duty of erecting the roof over the sidewalk, and creates a cause of action in favor of the person injured by reason of noncompliance therewith, the owner is not liable for an injury sustained through the negligence of a subcontractor's servants in letting material fall into the street below; the owner's omission not being the proximate cause of the injury.

**4. CONSTRUCTION OF BUILDING—LIABILITY OF SUBCONTRACTOR—NEGLIGENCE— DEATH OF PERSON INJURED—INSANITY—EVIDENCE.**

Decedent, while employed by a subcontractor in the construction of a building, was injured by a brick falling upon his head from the sixth story through the negligence of the servants of another subcontractor. The accident occurred in July. On a night in September he acted as if out of his mind, and walked the floor; hitting his head, and saying that there was something sticking up there. Early in the morning he went out, and later that day he was brought to a hospital, drenching wet and in an unconscious state, and received treatment for submersion. For several days he was at times violently irrational, and in October he died from pneumonia. Hearsay testimony tended to show that, after going into the street on the day he was taken to the hospital, he jumped into the river. *Held*, assuming, without deciding, that the subcontractor whose servant negligently caused the injury was liable for decedent's death, resulting from pneumonia brought upon himself while insane, if the insanity was directly due to the injuries, that the evidence was insufficient to show that the person injured was insane, or that he jumped or fell into the river, or otherwise got wet, as a result thereof.

**5. SAME—WHAT CONSTITUTES INSANITY.**

The rule as to what constitutes insanity in insurance cases involving suicide is properly applied in determining whether a person injured by the negligence of defendant's employés was, in consequence of his injury, insane at the time of committing an act which contributed to his death.

O'Brien, J., dissenting.

Appeal from trial term, New York county.

Action by Margaretha Koch, as administratrix of the estate of William Koch, deceased, against Richard K. Fox, Jacob Zimmerman, and another. From a judgment for plaintiff, and from an order denying motions for a new trial, defendants Fox and Zimmerman appeal. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Louis J. Verhaus, for appellant Fox.
H. Snowden Marshall, for appellant Zimmerman.
James A. Allen, for respondent.

LAUGHLIN, J. This is an action under the statute to recover for the death of William Koch, alleged to have been caused by the negligence of the defendants. The premises situate on the southerly side of Dover street, in the city of New York, and known as Nos. 2, 4, 6, and 8, were owned by the appellant Fox, who on the 21st day of February, 1899, entered into a contract with the defendant Cabus for the erection thereon of a six-story store and apartment building, with basement or cellar, according to certain drawings and specifications which had been prepared for the owner by an architect. The contractor agreed to furnish all material and labor, and

to complete the entire work, for a gross sum. The work was to be done under the general supervision of the architect, and the contractor agreed to properly guard against all injuries to employés or to the public; to comply with all laws relating to building in force in the city of New York, and with the rules and regulations of the department of buildings; and to give all notices required; and to obtain all official permits, and pay the fees therefor. The owner was in Europe, and gave no directions or instructions to the contractor. The only directions given by the architect related to the execution of the contract according to the plans and specifications. Cabus was a builder of eight years' experience, and no question was raised as to his competency. He had never erected, or been required, to erect a covering over a walk, and the architect made no request that he do so in this instance. On the 14th of March, 1899, Cabus sublet the mason work to appellant Zimmerman. One Herrell likewise had a subcontract from Cabus for putting in the beams, floors, studding, and rough carpenter work; and the decedent, a framer by trade, was employed by him. On the 10th day of July, 1899, while the decedent was on the middle of the sidewalk, in the public street adjacent to the premises, in the act of carrying strips of wood into the building, in the course of such employment, he was struck on the head by half a brick which the evidence tended to show fell from a scaffold over the sidewalk opposite the sixth story of the building, where the employés of Zimmerman were laying brick. The only negligence with which the owner and general contractor are charged in the complaint is failure to erect a shed over the sidewalk pursuant to the requirements of an ordinance of the city of New York approved on the 25th day of September, 1895, as amended on the 18th day of November, 1895, and which was continued in force and effect by section 41 of the Greater New York charter. This ordinance provides as follows:

"That hereafter the owner or general contractor engaged in the construction or erection of any building over five stories in height, shall build, or cause to be built, a temporary roof structure over the sidewalk in front of said building, and said contractor or owner, prior to the erection of such bridge or roof, must secure permission for such construction from the commissioner of public works, and shall pay therefor such compensation as may be deemed equivalent by said commissioner for the privilege so conferred."

It is conceded that the ordinance was not complied with either by the owner or general contractor. Bankruptcy proceedings are pending against the latter, and the action was stayed as to him.

Counsel for the owner moved for a nonsuit and for a direction of a verdict upon the ground that, upon the facts here presented, the ordinance imposed no duty upon his client. The court denied these motions, and instructed the jury that it was the duty of the owner, as well as of the general contractor, to construct a covering over the walk in conformity with the ordinance. Exceptions were duly taken to these rulings. The many important questions arising on this appeal will now be stated and considered separately:

1. The first question presented is, does this ordinance operate upon both owner and contractor, or was it designed to require the one

actually performing the work to construct the covered way? The true interpretation of a statute or ordinance requires a consideration of the prior law; of the mischief or evil sought to be remedied, and the remedy prescribed. Potter, Dwar. St. 184. An important inquiry is, therefore, whether on similar facts the owner would have been liable before the enactment of the ordinance. The construction of a six-story apartment building adjacent to a public street, but on private premises, is not a work either imminently or necessarily dangerous. It did not involve any interference with the surface of the street. By the exercise of ordinary care, such work may be performed in safety without creating a nuisance, and without injury to those lawfully on the public highway. Under independent contracts for the erection of buildings, not materially different from this, it has been held that the owner is not liable for the neligence of those employed on the work, by which a person lawfully upon the premises, or in an adjacent public street, is injured. Burke v. Ireland, 166 N. Y. 305, 59 N. E. 914; Uppington v. City of New York, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; Engel v. Eureka Club, 137 N. Y. 100, 32 N. E. 1052, 33 Am. St. Rep. 692; Herrington v. Village of Lansingburg, 110 N. Y. 145, 17 N. E. 728, 6 Am. St. Rep. 348; Callan v. Pugh, 54 App. Div. 545, 66 N. Y. Supp. 1118; Hawke v. Brown, 28 App. Div. 37, 50 N. Y. Supp. 1032. It will be observed that the municipal legislators have not used appropriate language plainly imposing this duty on both owner and contractor. They have used the participle or disjunctive conjunction "or," which is ordinarily employed to indicate an alternative; as one or the other, but not both, of two or more persons or things. We are asked to hold that "or," as here used, means "and." The courts have sometimes, in the construction of a statute, declared that "or" was used in the sense of "and," and vice versa. People v. Rice, 138 N. Y. 151, 33 N. E. 846; Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. E. 821. But that is only done in cases where from the context or other provisions of the statute, or from former laws relating to the same subject, and indicating the policy of the state thereon, such clearly appears to have been the legislative intent. Here there was no former statutory law or ordinance, and we find nothing in the context to indicate an intent that the ordinance should operate on both owner and contractor. Why should both owner and contractor be required to erect a structure over the walk? The ordinance is quite general, and it contains no plan or specification. It does not prescribe the height of the structure, or specify the materials to be used in its construction, or their dimensions. If both are required to erect the covering, a conflict might arise between them with reference to the manner of complying with the ordinance. Both could not well do the work, and one might neglect the duty, relying upon the other, who might fail to perform it. The purpose of the ordinance was to require the protection of people upon the walk. It is wholly immaterial who erects the shed or roof. The essential requirement is to have it erected. The terms of the ordinance are satisfied by a construction which requires compliance by the owner if he be doing the work by day labor or through con-

tractors for separate parts, so that he retains charge and control, and compliance by the general contractor if the work be all let by one contract, so that the contractor may be said to be independent, in that he has full charge and control of the entire work, subject only to such supervision as will insure to the owner compliance with the plains and specifications. We perceive no difficulty in enforcing the ordinance against the general contractor which should militate against this construction. Personal liability for negligence is by this construction left where it was before, and a specific precaution is required to be taken by the party ordinarily liable, to prevent accidents. In the case of Smith v. Traders' Exchange, 91 Wis. 360, 64 N. W. 1041, 30 L. R. A. 504, 51 Am. St. Rep. 912, relied on by the respondent, the ordinance was different. The clause which the court deemed significant, as indicating an intention to make it the duty of both the owner and contractor to erect a covered way over the walk, was, "Any owner or contractor who shall hereafter build or cause to be built, any building abutting on a public sidewalk shall after the completion of the first story cause a shed to be erected over the walk." Even though the owner lets the entire work to an independent contractor, still manifestly, he causes the erection of the building (Dorrity v. Rapp, 72 N. Y. 307), and that was the controlling consideration in the Smith Case.

2. But if the ordinance imposes a duty or obligation upon the owner as well as the contractor, while he would be subject to the penalty imposed for its violation, it by no means follows that it creates a new cause of action in favor of third parties for a failure on the part of the owner to comply therewith. It is made plain by the authorities already considered that, if the owner is liable at all, it is solely for his omission to comply with the ordinance, which does not regulate or prescribe the manner of performing an existing duty, but imposes a new obligation, not resting upon or connected with any common-law or statutory duty. While the rule is not uniform in all jurisdictions, ordinarily the violation of an ordinance does not, in and of itself, constitute negligence. It is merely evidence of negligence where some common-law duty in the premises rested upon the party violating it. Knupple v. Ice Co., 84 N. Y. 488; Massoth v. Canal Co., 64 N. Y. 531; Moore v. Gadsden, 93 N. Y. 12; McRickard v. Flint, 114 N. Y. 222–226, 21 N. E. 153; Fuchs v. Schmidt, 8 Daly, 317; Connor v. Traction Co., 173 Pa. 602, 34 Atl. 238; Shear. & R. Neg. § 13. It may be conceded that in a proper case it is competent for the legislature, under its general police power, to impose a new duty for the protection or safety of the public, or of persons occupying or in buildings, the violation of which, if it directly and without any intervening cause results in injury or damage, will give rise to a cause of action; and doubtless the legislature may delegate this authority to a municipal legislature. Dorrity v. Rapp, supra; Pauley v. Lantern Co., 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194; Freeman v. Paper Mill Co., 61 Hun, 125, 15 N. Y. Supp. 657; Willy v. Mulledy, 78 N. Y. 310, 34 Am. Rep. 536; Ryan v. Thompson, 38 Super. Ct. 113; Pichter v. Lennon, 12 App. Div. 356–359, 42 N. Y. Supp. 156; McLaughlin v. Armfield, 58 Hun, 376, 12 N. Y. Supp. 164; Parker v. Barnard, 135

Mass. 116, 46 Am. Rep. 450; Woodruff v. Bowen, 136 Ind. 431, 34 N. E. 1113, 22 L. R. A. 198. In all cases where such liability has been imposed and sustained, except the Wisconsin case cited, the omission to comply with the law or ordinance was the direct cause of the injury, without the intervention of other negligence. If the municipal legislators were authorized to enact an ordinance imposing a liability which in a case like this would make the owner answerable for the personal negligence of the contractor, subcontractor, and their employés, does this ordinance indicate an intent to impose such liability? The ordinance, in terms, merely requires the erection of the shed, and does not purport to reverse or overrule the settled law on the subject, and declare that the owner shall be responsible for the negligence of his independent contractor. The object of the ordinance is to prevent accidents, not to regulate liability therefor. Under the general law the owner owed no duty, and was under no liability, to persons injured under such circumstances; and, since the law permits an owner to relieve himself from liability for the personal negligence of a contractor, it is not within the province of the municipal assembly to create a cause of action against him for injuries resulting from such negligence, even though the injuries might not have happened if he complied with the ordinance. City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760; Moore v. Gadsden, supra; Raimey v. Railroad Co., 68 Hun, 495, 23 N. Y. Supp. 80; Fuchs v. Schmidt, 8 Daly, 317; Heintz v. Mayor, etc., 50 Super. Ct. 295, 297; Chambers' Adm'r v. Insurance Co., 1 Disn. 327; Heeney v. Sprague, 11 R. I. 456, 23 Am. Rep. 502; Rubin v. Miller, 30 Pittsb. Leg. J. (N. S.) 351; Railroad Co. v. Ervin, 89 Pa. 71, 33 Am. Rep. 726; 1 Thomp. Neg. § 1206. No liability attaches to the owner, except by virtue of the ordinance, and it is quite clear that a cause of action in favor of the party injured cannot be founded thereon exclusively.

3. Even if the ordinance imposed a duty on the owner which affords a cause of action to the person injured through his omission to comply therewith, yet the failure of the owner to erect the shed was not the proximate cause of the injury. The accident would not have occurred but for the negligence of the employés of Zimmerman, as found by the jury. It was Zimmerman's duty to perform his contract with care, and to safeguard the work, to the end that people lawfully upon the street would not receive injury. He was aware that there was no protection below, and he was under no obligation to proceed with the work if he could not do it safely, but manifestly it could have been done with entire safety. The owner merely failed to take a precaution required by the ordinance to protect pedestrians against the possible negligence of others. This is not a case where the work, even if properly done, creates a peril unless guarded against. The negligence which caused the injuries was neither necessarily incidental to the execution of the contract, nor contemplated by the parties. Although the omission of the owner to comply with the ordinance may have been a remote cause, it is manifest that the intervening negligence of the contractor was the direct and proximate cause of the injuries, and in these circumstances the owner would not be liable. Laidlaw v.

Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216; Storey v. Mayor, etc., 29 App. Div. 316, 51 N. Y. Supp. 580; Carter v. Towne, 98 Mass. 567, 96 Am. Dec. 682; Scheffer v. Railroad Co., 105 U. S. 249, 26 L. Ed. 1070; Ray, Neg. Imp. Duties, pp. 669, 670. It follows that no cause of action was established against the owner, and the complaint should have been dismissed as to him.

4. It is expressly conceded for the purposes of this appeal, in the points of the appellant Zimmerman, that freedom from negligence on the part of the decedent was shown, and that, under the doctrine of res ipsa loquitur, there was sufficient evidence to sustain the finding of negligence on his part. But appellant Zimmerman claims that decedent's death was not so connected with the injuries received as to make him liable therefor, and he urges certain exceptions to the charge, and to the refusal of the court to charge, on that subject, which we think were well taken. The widow testified, without objection, that on the night of the 15th of September her husband was "all night like out of his mind," and walked up and down the floor, hitting his head, saying, "Oh, my head!" at one time saying: "There is something sticking up here. Don't you see it? Cut it away,"—and then would lie down and be quiet for awhile, and then would jump up again; that early in the morning, after being in bed and asleep, he got up, dressed, and broke away from her while she was endeavoring to restrain him, and went out upon the street. In the early morning of that day he was brought into the Roosevelt Hospital, drenching wet, in an unconscious state, and was treated for "submersion." He recovered from these symptoms, and for several days subsequently he was at times violently delirous, and at other times simply irrational, and in about five days he developed an "acute lobar pneumonia," and died on the 4th day of October. The hospital physician testified that death was due to pneumonia and chronic alcoholism. It is not disputed that death resulted from pneumonia, and the jury were so instructed. There was no testimony of an eyewitness as to where decedent was, or what happened to him, between the time he left his house on the morning of the 16th of September and the time he was brought to the hospital. Considerable hearsay testimony on that subject was, however, brought into the case by counsel for appellant Zimmerman. The decedent's physician testified on cross-examination that he was told by the widow that her husband jumped into the North River from the dock at the foot of Fifty-Seventh street while insane; that he was taken out of the water, and started on the street, where he was subsequently arrested, taken to the station house, and from there to the hospital. Three physicians called by the appellant gave it as their opinion, in answer to a hypothetical question assuming as a fact that decedent thus jumped or fell into the river and suffered from immersion, that his death was caused by pneumonia, and that the pneumonia was caused by the immersion, and not by the injury. The doctor who was the attending physician down to the 16th of September testified that the injury received was sufficient to have caused death before; that, in his opinion, the decedent would have died at the same time and from the same cause if he

had not been in the river; and that the pneumonia was caused by the decedent's low vitality, which resulted from the injury. The charge is, however, somewhat inconsistent and conflicting with respect to the liability of the defendants for the consequences of decedent's getting wet, and it is impossible to ascertain upon what theory the verdict was rendered. After instructing the jury that plaintiff could not recover unless death would have resulted at the same time and in the same manner if decedent had not become wet, the court further charged that if the accident led to the decedent's falling or jumping into the river, as the direct or proximate cause of the injury, defendants were liable, if negligent, and declined to charge that 'if, through insanity or mental aberration due to the injury, he attempted his own life, and that was the proximate cause of death, or resulted in his contracting pneumonia, their verdict must be for the defendants; and it was left for the jury to determine what the facts were in this regard. The appellant excepted to these instructions and refusals to charge, upon the ground that there was no evidence that decedent was insane, or that he got into the water as the result of insanity. The court further instructed the jury that if decedent, in a fit of despondency, or from any other cause, attempted his own life, and died as the result of such attempt, the plaintiff could not recover, but subsequently declined to charge that defendants were not liable if in such attempt he contracted a disease which caused his death, and charged that if, in a fit of despondency, or from any other cause not the direct result of the accident, decedent attempted his life, and died as the result, or if he contracted pneumonia which resulted solely from the wetting, the plaintiff could not recover. These charges and refusals to charge were also excepted to. The court further charged that, if the pneumonia resulted solely from the immersion in the water, plaintiff could not recover.

If the injury directly caused the insanity and the pneumonia was produced by the decedent's own act while insane, there may be room for argument, upon the facts in this case, that it was too remote from the negligent act to hold the appellant responsible therefor. It was said in Railroad Co. v. Hickey, 166 U. S. 521, 528, 17 Sup. Ct. 661, 41 L. Ed. 1101, that the decision in Scheffer v. Railroad Co., 105 U. S. 249, 26 L. Ed. 1070, was based upon the ground that the suicide some eight months after the injury was too remote; but the opinion in the latter case went further, and stated that the suicide was an independent intervening cause. If insanity resulted directly from the injuries negligently inflicted, and as the natural and probable cause, I fail to see how the involuntary act of an insane man in either injuring or killing himself can be deemed an efficient independent cause, constituting the proximate cause of the injuries thus inflicted upon himself, or of his death brought about by his insane acts. It seems to me that the negligent act, being the cause of his insanity which deprives him of his reason, is the proximate cause of the self-inflicted injuries or death. Impairment of mental capacity is an element of damage (Wats. Dam. §§ 581, 582), and I have no doubt that a person who is rendered insane by a physical injury caused by negligence, or his committee, can maintain an action and recover damages for

the dethronement of his reason. Where an action could have been maintained by the person injured, the Code authorizes a recovery by his administrator. Code Civ. Proc. § 1902. It would seem to follow that, if the insanity is the natural and probable result of the injury, the party through whose negligence it was inflicted would be liable for the death of the insane person, brought about by his own act, provided such death be the ordinary and natural result of the negligent act, and not too remote in time, or its connection with the injury be not involved in such doubt and uncertainty as to render it inadvisable, upon grounds of public policy, to hold the wrongdoer responsible therefor. Insurance Co. v. Robbins' Adm'r, 12 C. C. A. 544, 65 Fed. 178, 27 U. S. App. 458; Railroad Co. v. Back, 96 Ind. 346, 49 Am. Rep. 168; Travellers' Ins. Co. v. Melick, 12 C. C. A. 544, 65 Fed. 178, 27 L. R. A. 629; Purcell v. Lauer, supra; Rettig v. Transportation Co., 6 Misc. Rep. 328–338, 26 N. Y. Supp. 896; Thompson v. Railroad Co., 91 Ala. 496, 8 South. 406, 11 L. R. A. 146; Mitchell v. Railway Co., 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. Rep. 604; Hoffman v. King, 160 N. Y. 618, 55 N. E. 401, 46 L. R. A. 672, 73 Am. St. Rep. 715; Braun v. Craven, 175 Ill. 404, 51 N. E. 657, 42 L. R. A. 199; Thomp. Neg. (2d Ed.) § 153; Whart. Neg. § 94. On this appeal, however, it is not necessary to determine whether appellant would be liable if insanity ensued, and the pneumonia was caused by decedent's exposure while insane; and in view of the importance of the question, and the far-reaching consequences, a decision thereon is inadvisable.

Assuming, without deciding, that the appellant would be liable for the decedent's death, produced from pneumonia brought upon himself while insane, if the insanity was directly caused by the injuries, still the verdict cannot be sustained, for the evidence is entirely insufficient to establish insanity, or that the decedent's jumping or falling into the river, or otherwise getting wet, was owing thereto. I think that the rule stated in the insurance cases involving suicide, as to what constitutes insanity, may be properly applied here. The rule adopted in those cases where the companies are not responsible if the insured "die by his own hand" is that there is no liability unless the insured was mentally so disordered as not to understand that the act he committed would cause his death, or committed it under the influence of some insane impulse which he could not resist, although knowing the consequences; it not being sufficient that his mind was so impaired that he was not conscious of the moral obliquity of the act. Van Zandt v. Insurance Co., 55 N. Y. 169, 14 Am. Rep. 215; Newton v. Insurance Co., 76 N. Y. 426, 32 Am. Rep. 335; Meacham v. Association, 46 Hun, 364, 120 N. Y. 237, 24 N. E. 283. If decedent jumped into the river, and at that time his reasoning faculties were so impaired that he was unable to understand the nature, effect, and consequence of the act, or if he was impelled thereto by an uncontrollable impulse, then, doubtless, he was an irresponsible agent, and insane. So, likewise, if he fell into the river while wandering about in that condition of mind, it could not be said to be his own act. Whart. Neg. §§ 87, 88; Insurance Co. v. Isett's Adm'r, 74 Pa. 176; Worthington v. Mencer, 96 Ala. 310, 11 South. 72, 17 L.

R. A. 407. Sanity, however, is presumed, even as to a person who takes his own life, and the burden was upon the plaintiff of establishing decedent's irresponsibility; and acts and incidents which are as consistent with sanity as with insanity will not warrant the submission of the question to the jury. 4 Joyce, Ins. §§ 2640, 3773; 2 Bid. Ins. § 325; Weed v. Insurance Co., 35 Super. Ct. 386, 41 Super. Ct. 476, 70 N. Y. 561; Coffey v. Insurance Co., 35 Super. Ct. 314. Nor is this presumption overcome by proof of occasional fits of insanity. 2 Bid. Ins. § 846. The hearsay testimony with reference to decedent's falling or jumping into the river, and being insane at the time, is not evidence; nor do we think the appellant was estopped, by drawing it forth, from excepting to its being submitted to the jury as such. But if he were estopped, the facts and circumstances under which the decedent got into the water are not disclosed even by the hearsay testimony. The evidence of the widow indicates that decedent was in a high state of mental excitement at the time he left the house, but, as there is no satisfactory evidence of previous insanity, that is insufficient to warrant a finding that he became and continued irresponsible. He may have fallen into the water through his own carelessness, and he may have jumped in through fright, or an error of judgment, or to avoid apprehended danger, or from other motives, while mentally responsible, within the rules stated; and in either case, manifestly, the appellant would not be liable for the consequences. Raymond v. City of Haverhill, 168 Mass. 382, 47 N. E. 101; Meyer v. King, 72 Miss. 1, 16 South. 245, 35 L. R. A. 474. The jury were not justified in finding that he was impelled into the water by an insane impulse, or that he did not at the time possess sufficient reason to understand the consequences, or to be capable of exercising care for his own safety, and therefore appellants' exceptions were well taken.

The judgment and order should be reversed, and a new trial granted, with costs to appellants to abide the event. All concur, except O'BRIEN, J., who dissents.