(86 App. Div. 14.)

### DUERR v. CONSOLIDATED GAS CO. OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department.   July 7, 1903.)

1. APPEAL—CHANGE OF THEORY.
    Where an action to recover for injuries caused by the bursting of a water tank on premises adjacent to those on which plaintiff was at work was tried on the theory of negligence, plaintiff cannot, on appeal, rely on a cause of action for trespass.
2. NEGLIGENCE—INJURIES TO PERSON—SUFFICIENCY OF EVIDENCE.
    Evidence examined in an action to recover for injuries caused by the bursting of a water tank, and held to justify a finding of negligence on the part of the owner and the contractors who had constructed the tank.
3. SAME—INDEPENDENT CONTRACTOR—LIABILITY OF OWNER.
    Plaintiff was injured by the bursting of a newly constructed tank, which had been filled with water to test whether it was water-tight before it was delivered to the owner by the contractor.   The plans prepared by the owner required that the rivet holes in the plates should be drilled, but it was shown that instead the holes had been punched, which had caused incipient cracks in the plates.   The evidence tended to show that the accident was due to the weakened condition of these plates, that the owner was aware of the fact that the holes were punched,

¶ 1. See Appeal and Error, vol. 2, Cent. Dig. §§ 1053–1055.

and that this change was made at the direction of the owner's chief engineer. *Held*, that the owner was liable for any damages resulting from this change in the original plans.

4. SAME—LIABILITY OF CONTRACTORS.

As the contractors had held themselves out as competent builders of this kind of work, it could be assumed that they knew the effect on the tensile strength of the plates produced by the punching of the holes, and hence the jury might find them liable as joint tort feasors.

5. SAME—DOCTRINE OF RES IPSA LOQUITUR.

A large tank, constructed by independent contractors according to the plans of the owner, was, before delivery to the owner, filled with water, at the direction of the contractors, to test whether it was water-tight. While thus filled with water, it burst, causing injuries to plaintiff, who was at work on premises near by. *Held*, that the doctrine of res ipsa loquitur applied to both the owner and the contractors.

6. SAME—PRESUMPTION OF NEGLIGENCE.

Even though the doctrine of res ipsa loquitur be applied in an action to recover for injuries caused by the bursting of a recently constructed water tank, evidence to show proper workmanship and inspection by those in control of the tank will not be overcome by the presumption raised by that doctrine—that, as the accident was not due to any external or other adequate cause, it was due to negligence in construction.

Appeal from Trial Term, New York County.

Action by Michael Duerr against the Consolidated Gas Company of New York and others. Judgment for plaintiff, and defendants appeal. Reversed.

Appeal by defendants from a judgment of the Supreme Court, entered in the clerk's office of the county of New York on the 3d day of January, 1902, upon a general verdict in favor of the plaintiff, directed by the court after the submission of certain questions involving the merits to the jury, and from an order denying their motion for new trial.

The action is brought to recover for personal injuries sustained by the plaintiff in consequence of the collapse of a tank containing 1,000,000 cubic feet of water, alleged to have been caused by the negligence of the defendants. The defendant gas company was the owner or lessee of premises extending from Twentieth to Twenty-First streets in the interior of the block between Avenue A and First avenue. Evidently through its engineering department—although the fact is not specifically shown—it prepared plans and specifications for the erection on these premises of a four-lift gas holder, guide frame, and steel tank, and on the 15th day of March, 1898, contracted with the defendants Logan for the construction thereof pursuant to such plans and specifications, and "under the direction of the chief engineer of the owner." The work was commenced on or about the 1st day of June, 1898. The specifications provided that the tank was "not to be accepted until it had been proven water-tight after being filled with water to its full height, and so remained for thirty days." Upon the 3d day of December, 1898, work upon the tank proper was completed, and the contractors requested the gas company to turn on the water for the test. The interior diameter of the tank was 178 feet, and its depth was 42 feet. Twelve feet of the tank were below the surface of the ground, but an open pit extended all around it. The bottom of the tank was formed of steel plates three-eighths of an inch in thickness, resting on concrete and brick foundation. The sides of the tank were also constructed of steel plates consisting of 10 courses, each course consisting of 22 plates a little over 4 feet wide and 27 or 28 feet long. The thickness of the plates ranged from 1½ inches for lower course to ⅞ of an inch for the upper course. The edges of the plates were to be planed and fitted, the horizontal seams lap-riveted, and the vertical joints to be butted, and the plates joined by outside and inside butt straps. The bottom course of side plates was to be connected with the bottom plates by a ring of 5x5-inch angle steel extending all around, and composed of 22 bars or

sections. The bottom course of side plates was to be riveted to this angle steel by a single row of 1¼-inch rivets spaced about 3⅗ inches from center to center. The rivets of the next horizontal seam above, near the top of the plates, were to be 1½ inches in diameter, spaced $4^9/_{10}$ inches from centers. For the number, size, and position of rivets in the plates at the ends or vertical seams the specifications referred to a detailed drawing, which is not contained in the record, but evidently it is not material. The company had a water tank or tower in the vicinity filled with water from the East river, and this was connected with the new tank, and the water was allowed to flow in gradually until the tank was filled, which took 10 days, and the water was shut off at 8 o'clock in the morning of the 13th day of December. At about 5:20 o'clock in the afternoon the tank gave way. The plaintiff, a wood carver, was working on the ground floor in the rear of a furniture factory on adjacent premises which fronted on Avenue A. The water tore away the rear and part of the side of the factory, carrying him into the street, and dashing him against floating débris and other obstructions, whereby he sustained serious injuries.

The gas holder had been constructed, was in place, and substantially completed; but as the gas had not been connected, and as the pressure of the water was exerted against the sides of the tank, and not against the sides of the holder, it is conceded that it had no connection with the accident, and consequently it need not be described. The precise point at which the tank first gave way was not shown by any eyewitness. Evidence was given, however, tending to show that the principal fracture was at the northeast quarter of the tank; that the plates were fractured from the bottom to the top at the northeast and northwest quarters of the tank about 105 or 120 feet apart, and the section of the side between these fractures at its easterly end was moved out at the bottom and forced up the side of the pit toward Twenty-First street about 13 feet, and held in at the top by the guide frames, which had pitched toward the center of the tank, and this end of the side was bent out in the middle in the shape of the letter "C"; that at the other end it had moved out only 1 foot and 9 inches toward Twenty-First street, but had moved westward 3 feet and 9 inches, so that it had pivoted around and opened a V-shaped crack; that this was the only point where the fractured parts that had been together had moved in opposite directions; that the upper part of this section tore off, and was carried across Twenty-First street; that there was also a fracture at the southwest quarter of the tank extending nearly from the bottom to the top, and another fracture, less extensive, in the southerly or southeasterly side, and other smaller fractures elsewhere.

The steel plates were manufactured by a reputable concern, were of good material, and suitable for this use. According to the testimony of the expert called by the plaintiff, the plans and specifications were proper, and if the tank had been constructed of the steel plates that were used, in accordance therewith, there would have been a factor of safety of more than three; i. e., that it would have withstood a pressure more than three times as great as would be exerted upon the sides of the tank when filled with water. The rivet holes in the plates forming the bottom course of the sides were punched. The plans provided that the rivet holes in the three lower courses should be drilled. The plaintiff's expert testified that it is not proper to punch holes in steel plates more than an inch in thickness; that punching rivet holes in such plates a quarter of an inch thick weakens the plates, aside from the loss of the metal removed, 6 per cent.; that a fresh fracture would be of a yellowish color; and that he found on the outer side of the plate evidence of "a fine-grained fracture with a dark brown color, showing an older fracture," extending up and down from the lower rivet hole through the hardened ring caused by punching a distance of about three-fourths of an inch, and penetrating about half the thickness of the plate; that these finer-grained fractures were such as are made by punching; that different causes produced the coarse-grained fracture and the fine-grained fractures; that, where holes are punched, they should be reamed to remove the ring of hardened metal, but that these holes were not reamed; that punching the holes in these plates, and curving them for the sides of this tank with the die sides

out, would weaken them so as to reduce the factor of safety below one, and they would not be strong enough to sustain the pressure with the tank full of water; and he further testified, assuming the finer-grained cracks to have been made by punching, that these would also so diminish its resisting power that it would give way under the pressure with the tank full of water.

The contract price of the work was $167,500, payable in installments as the work progressed, upon the certificate of the company's chief engineer that the work had been performed in accordance with the plans and specifications. The gas company reserved the right to make changes and alterations in the work as it progressed. The contractors had been paid $120,500, all that had become due.

The defendants gave evidence tending to show that the plates were carefully inspected after being punched, and that there were no fine or incipient fractures made by punching, and that they were properly reamed. The contractors gave evidence from which it may be inferred that these holes were punched, instead of being drilled, by direction of the chief engineer of the gas company. The other material facts are stated in the opinion.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

David McClure, for appellant Consolidated Gas Co.

Frank Verner Johnson, for appellants William J. and Frank J. Logan.

Ferdinand M. Bullowa, for respondent.

LAUGHLIN, J. Counsel for the respondent contends that the accumulation of this large body of water in a tank above the surface of the earth, and allowing it to be precipitated on adjacent premises, where the plaintiff was lawfully at work in the employ of the owner or lessee thereof, constituted a trespass, for which both the gas company and the contractors are responsible, since they participated therein, and that they are liable for the injuries inflicted upon him, regardless of any question of negligence.

It has been held that an owner of land is liable in trespass for damages caused to persons or property upon a highway or neighboring premises, no matter how carefully the work is conducted, by falling rock blasted in making an excavation for improving his premises, and that, if the work is done by an independent contractor, the contractor alone is liable. Sullivan v. Dunham, 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274, and cases cited; St. Peter v. Denison, 58 N. Y. 416, 17 Am. Rep. 258; Hay v. Cohoes Company, 2 N. Y. 159, 51 Am. Dec. 279; Berg v. Parsons, 156 N. Y. 109, 50 N. E. 957, 41 L. R. A. 391, 66 Am. St. Rep. 542. On the other hand, it has been held that trespass does not lie for damages sustained by the explosion of a steam boiler, an explosion in an oil refinery, or the breaking of a fly wheel, precipitating something upon a person in the highway or on adjacent premises, and that in such case negligence must be shown to warrant a recovery. Losee v. Buchanan, 51 N. Y. 476, 479, 10 Am. Rep. 623; Piehl v. Albany Ry. Co., 30 App. Div. 166, 51 N. Y. Supp. 755, affirmed 162 N. Y. 617, 57 N. E. 1122; Cosulich v. Standard Oil Co., 122 N. Y. 118, 25 N. E. 259, 19 Am. St. Rep. 475. The distinction attempted to be made between these classes of cases is that in one the owner or contractor was in the act of moving the material which inflicted the injuries,

while in the other the material was set in motion involuntarily, casually, and incidentally. Sullivan v. Dunham, supra. In the case at bar neither the contractors nor owners were at the time engaged in the act of moving the water, and they were guilty of no affirmative act which caused it to move from the tank. But even if this fact would bring the case within the doctrine of the explosion cases already cited, it would not be decisive of the question as to whether the defendants are liable on the theory of trespass; at least, not as to whether the owner would be liable on that theory. This was an artificial accumulation of water, and the weight of authority is to the effect that an owner who interferes with the natural fall or flow of water, which results in its being precipitated upon or percolating through into the premises of another in a channel in a manner different from that which would have resulted from the natural fall or flow of the water, is responsible for the damage caused thereby; in other words, that one who accumulates water on his own premises, whether in a reservoir or otherwise, does so at his peril. Bellows v. Sackett, 15 Barb. 96; Pixley v. Clark, 35 N. Y. 520, 91 Am. Dec. 72; Jutte v. Hughes, 67 N. Y. 267; Mairs v. Manhattan Real Estate Assn., 89 N. Y. 498; Davis v. Niagara Falls Tower Co., 171 N. Y. 336, 64 N. E. 4, 57 L. R. A. 545, 89 Am. St. Rep. 817; Finkelstein v. Huner, 77 App. Div. 424, 79 N. Y. Supp. 334; Reed v. State, 108 N. Y. 407, 15 N. E. 735; Rylands v. Fletcher, L. R. 3 H. of L. 330. The question whether owners or contractors, or both, would be liable in trespass, is one not easy of solution, and we think it should not be decided upon this appeal. As shown in the statement of facts, the complaint is framed on the theory of negligence, and the record indicates that the action was tried upon that theory. The plaintiff, therefore, may not, upon the appeal, rely upon a cause of action for trespass. If he desired to present that question, he should have tried the case on that theory.

Upon the trial the plaintiff did not rely upon the doctrine of res ipsa loquitur, but assumed the burden of pointing out the particular negligence with which he charged the defendants. The precise negligence charged and presented by the evidence is improper construction or workmanship in punching the bottom course of side plates, which were too thick to render that a safe method of making holes for the rivets, in failing to ream the holes after punching, in convexing the sides of the plates that were next the die in punching, and in failing to discover and reject plates in which incipient cracks had been caused by the punching process. This work was done by the contractors. There is evidence from which the jury might have inferred that it was done with the knowledge of the chief engineer of the gas company, who was its authorized agent, daily in charge of supervising the work, and there is also express evidence that this departure from the method of performing the work provided for in the plans was made by the direction of the chief engineer. We are of opinion that this evidence was sufficient, not only to require the submission of the case to the jury as against the gas company and contractors, but to justify a finding of negligence on the part of all defendants. The uncontroverted evidence is to the effect that the plans and

specifications were adequate, if followed, not only to produce a tank of sufficient strength to sustain all the water that it would hold, but to afford a factor of safety of three.  There was no storm, no evidence of any external violence, and the record is barren of any fact or circumstance tending to account for this accident upon any theory except unskillful and improper construction and workmanship with respect to punching instead of drilling these holes, unless there was some flaw or defect in the material which is not specifically pointed out by evidence.

Counsel for the gas company contends that it delegated the performance of this work to independent contractors of reputed competency and skill; that the work was still in the hands of the contractors, had not been accepted by it, and, that, therefore, it is not responsible.  We regard this argument as untenable.  It is claimed on the other hand that the gas company retained such supervision over this work that it would not be relieved on the theory of nonliability for the negligence of an independent contractor.  The Logans were undoubtedly independent contractors, and for their negligent acts, or those of their employés, the gas company was not liable. Where the work is lawful, and its performance is not eminently or necessarily dangerous, and the entire work is let by a single contract, the contractor becomes an independent contractor, for whose negligence and that of his employés in the performance of the work resulting in injuries to third parties the owner is not responsible, even though he reserves sufficient supervision over the work by an architect, engineer, superintendent, or other person to secure a compliance with the plans and specifications, provided he exercised reasonable care in selecting a skillful, competent contractor.  Uppington v. City of New York, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; Koch v. Fox, 71 App. Div. 288, 291, 292, 75 N. Y. Supp. 913; Hawke v. Brown, 28 App. Div. 37, 50 N. Y. Supp. 1032; Kelly v. Mayor, 11 N. Y. 432; Berg v. Parsons, 156 N. Y. 109, 50 N. E. 957, 41 L. R. A. 391, 66 Am. St. Rep. 542.  The gas company was improving its own premises in a manner fraught with the greatest danger to life and property in the neighborhood, unless proper care was exercised in preparing safe plans and supervising their execution.  It was providing for the storage high above the surface of the adjacent premises of a liquid body over 60,000,000 pounds in weight.  If its chief engineer directed the contractors to punch these plates in the manner described, instead of drilling and reaming them, the gas company is as much responsible for the consequences as if the original plans and specifications had so provided; and in that event, if the testimony of the plaintiff's expert is to be believed, the plans would have been manifestly unsafe.  If no such directions were given, but the gas company, with knowledge of the manner in which the work was being done in departure from its plans and specifications, either approved or acquiesced therein, as the jury might have found, and participated in the filling of the tank with water, it is equally responsible.  The gas company, being a corporation obliged to act through officers and agents, and having in its employ an engineer to whom it saw fit to intrust the preparation of the plans and specifica-

tions and the supervision of the work, unlike an individual, who has no special knowledge of the methods of construction or strength of materials, and is obliged to rely upon competent architects and builders (Burke v. Ireland, 166 N. Y. 305, 59 N. E. 914), cannot escape liability on the theory that it was not acquainted with the strength of the steel plates or the effect of punching the holes instead of drilling them. There was evidence tending to show not only that the company was aware of the fact that the holes had been punched and not reamed, but that this was done by direction of its chief engineer, who was not called as a witness.

Liability of the gas company may, we think, be predicated upon the exceptions to the rule that a person is not responsible for the negligence of an independent contractor to whom it lets the performance of the work, which are well stated in Berg v. Parsons, supra, as follows:

"There are certain exceptional cases where a person employing a contractor is liable, which, briefly stated, are: Where the employer personally interferes with the work, and acts performed by him occasion the injury; where the acts performed create a public nuisance; and where an employer is bound by statute to do a thing efficiently, and an injury results from its inefficiency. * * * In none of these exceptional cases does the question of negligence arise. There the action is based upon the wrongful act of the party, and may be maintained against the author or the person performing or continuing it."

The exceptions to the rule are stated to the same effect in Engel v. Eureka Club, 137 N. Y. 100, 32 N. E. 1052, 33 Am. St. Rep. 692, in Uppington v. City of New York, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550, and in Deming v. Terminal Railway Company of Buffalo, 169 N. Y. 1, 61 N. E. 983, 88 Am. St. Rep. 521, and cases cited. See, also, Heffernan v. Benkard, 1 Rob. 432; Lockwood v. Mayor, etc., 2 Hilt. 66. Of course, there was no contractual liability between the gas company and the plaintiff, but the company owed him and all others upon adjacent premises or the highway the duty to exercise reasonable care in the use of its own premises, to the end that they might not sustain injury or damage from any buildings or structure thereon.

The evidence brings the case within the rule stated by the Court of Appeals in Cochran v. Sess, 168 N. Y. 372, 61 N. E. 639:

"Any one who participates in the construction of any structure which is obviously dangerous to human life is a party to the creation of the nuisance, and engaged in an active wrong, for the consequences of which he may be subjected to pecuniary responsibility."

Counsel for the contractors insists that they performed the work in accordance with plans and specifications prepared by the gas company, and changes and alterations made therein with respect to punching the rivet holes by direction of the chief engineer, and that consequently they are not liable. They built a structure which they represented was ready for the water test, and they directed that it be filled with water. It was to remain in their charge until it satisfactorily stood a test of remaining filled with water for 30 days. Upon being filled with water, owing to its improper construction, it became a public nuisance and a menace to life and property. Persons holding

themselves out as competent contractors and builders of work of this character may be presumed to know the effect upon the tensile strength of the steel plates forming the sides of this tank of departing from the plans and specifications, even by the direction of the chief engineer of the gas company, and punching these holes and leaving them unreamed, and curving the plates so as to convex the die sides, which tended to open any incipient cracks that might have been started by the punching process. Upon this evidence the jury might find that they were joint tort feasors, and liable as such under the rule quoted from the case of Cochran v. Sess, supra, and the further rule therein stated by the court in declaring the liability of contractors performing work upon a structure which fell, for injuries caused thereby, as follows:

"They are not liable, as we have seen, upon any contractual obligation or duty. The obligation that they were under to the deceased or the plaintiff was not different from that which they owed to the public at large, or to any other person who was lawfully in or about the building when it collapsed. The plaintiff was, therefore, bound to show that there was some defect in the defendant's work, which as reasonably prudent men they knew, or should have known, was of such a character as to render the structure a menace or danger to human life, or render it unsafe for any one engaged in and about the building."

In that case the defendant contracted to build a stone wall for the erection of a building. The owner furnished the foundation. A brick wall was erected upon the stone wall by other contractors. The stone wall collapsed, owing to the insecurity of the foundation, and injured an employé of another contractor. It was held that the defendant was not liable—

"Unless it was shown that notwithstanding the assurances of the building department there was such an apparent defect as to render it obvious to the contractors that they were about to erect a building upon a dangerous and insecure foundation. Ordinarily, they would be justified in relying upon the assurances of the building department, the architect, and the owner himself that the bottom furnished for the stone wall was safe and suitable for the purpose. But it may be that notwithstanding assurances of this kind from so many responsible sources, yet if it was obvious to a reasonably prudent man that a building of the character contemplated could not be erected on such a foundation with safety to human life, the defendants might be held responsible. It would undoubtedly require very strong proof of knowledge or negligence on the part of the contractors to subject them to liability under such circumstances."

See, also, Devlin v. Smith et al., 89 N. Y. 470, 42 Am. Rep. 311, and Bill v. N. Y. Expanded Metal Co., 60 App. Div. 470, 69 N. Y. Supp. 989.

The court charged the jury, and we think properly, that the doctrine of res ipsa loquitur applied to both the owner and contractors. Mullen v. St. John, 57 N. Y. 567, 15 Am. Rep. 530; Volkmar v. Manhattan Ry. Co., 134 N. Y. 418, 31 N. E. 870, 30 Am. St. Rep. 678; Hogan v. Manhattan Ry. Co., 149 N. Y. 23, 43 N. E. 403; Wolf v. American Tract Society, 164 N. Y. 30, 58 N. E. 31, 51 L. R. A. 241; Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630; Wittenberg v. Seitz, 8 App. Div. 439, 40 N. Y. Supp. 899. It was applicable to the owners on account of their ownership, possession of the premises, and supervision of

the work; and it was applicable to the contractors because they constructed the tank, participated in filling it with water, and were in charge of the work.

The learned court, however, erred in charging plaintiff's first request, to which counsel for the owner and contractors duly excepted. This request was as follows:

"The jury may take into consideration the fact that experience teaches that water tanks, if properly constructed, do not break without adequate cause. If the jury find that there is no evidence of external violence or other adequate cause, the fair presumption is that the breaking of the tank occurs through some serious defect in its condition, which could scarcely have escaped the observation of the persons in control thereof, and the jury may infer negligence on their part."

Even under the doctrine of the rule of res ipsa loquitur this was not a proper instruction. By virtue of that rule the plaintiff makes a prima facie case on showing the accident and attendant circumstances from which the presumption of negligence arises, and this will justify a verdict in his favor if the defendant offers no evidence. But when the evidence is all in, the burden still rests upon the plaintiff to satisfy a jury by a fair preponderance of evidence that the accident was caused by the negligence of the defendant, and the jury are to solve that question in the light of the presumption in favor of the plaintiff in the first instance, and the evidence introduced on behalf of the defendant tending to overcome it. Here the court not only instructed the jury that the presumption that the accident was owing to defendant's negligence established a prima facie case for the plaintiff, but in effect that this presumption prevailed, notwithstanding the evidence offered by the defendants tending to show proper workmanship and inspection. It may be, in view of the fact that the plans were conceded to be proper and adequate, and that there was no external violence or other adequate cause, that there was a presumption that the breaking of the tank occurred "through some serious defect in its condition"; but there certainly was no presumption that this defect "could scarcely have escaped the observation of the persons in control thereof," and the court was not warranted in instructing the jury, as a matter of law, that they might infer negligence based on that presumption. The evidence on the part of the defendants did not account for the accident, but they were not obliged to account for it. They claimed to have met the plaintiff's prima facie case by showing that punching these holes was common practice in such cases, that they reamed them, and made careful inspection for incipient cracks. The jury was scarcely at liberty to give due weight and consideration to this evidence presented on the part of the defendants, in view of this instruction of the court by which the jury were in effect instructed, as matter of law, that the steel plates were defective, and that the defects could have been discovered by proper inspection. As said by O'Brien, J., in writing for the court in Kay v. Metropolitan St. Ry. Co., 163 N. Y. 447, 57 N. E. 751:

"The jury were bound to put the facts and circumstances proved by the defendant into the scale against the presumption on which the plaintiff relied, and in determining the weight to be given to the former as against the latter

they were bound to apply the rule that the burden of proof was upon the plaintiff, and if, on the whole, the scale did not preponderate in favor of the presumption and against defendant's proof, the plaintiff had not made out her case."

If the jury believed the evidence presented in behalf of the defendants, they would have been justified in finding that there was no defect that could have been discovered by proper inspection, and that, while the accident was then left unaccounted for, it may have been due to some latent defect in the material or was an unavoidable accident. This they were not at liberty to do under the instructions given.

Various exceptions to the admission of evidence are assigned as error. Evidence that the chief engineer directed a departure from the plans with reference to drilling these holes was competent and material; but it was not proper to show it under objection and exception, by a leading question to the effect that any departure from the plans was made by direction of the chief engineer. In the examination of his expert, counsel for the plaintiff persisted in calling for opinion evidence which, to some extent, invaded the province of the jury and trespassed upon their functions. This may be avoided on the new trial, and it is unnecessary that we should take up and analyze the different questions to which objections and exceptions were interposed, and determine which were, and which were not, correctly ruled upon.

There are also other exceptions to the charge which present errors; but they are principally the result of conflicting instructions given at the request of counsel for the respective parties, inconsistent with the main charge, which was substantially correct.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur; VAN BRUNT, P. J., and McLAUGHLIN, J., in result.