JAMES MADISON KELLY, Appellant, v. LACLEDE REAL ESTATE & INVESTMENT COMPANY ET AL., Defendants, CARADINE HAT COMPANY, a Corporation, Respondent.

JAMES MADISON KELLY, Respondent, v. LACLEDE REAL ESTATE & INVESTMENT COMPANY, a Corporation, Appellant.—155 S. W. (2d) 90.

Division One, June 12, 1941.

Rehearing Denied, July 25, 1941.

*J. Edward Gragg* for James Madison Kelly; *M. G. Baron* of counsel.

*George A. Hodgman* and *Robert S. Lindsey* for Laclede Real Estate
& Investment Company.

*Bishop, Claiborne & Heneghan* for Caradine Hat Company.

DALTON, C.— This is an action for damages for personal injuries alleged to have been caused by the negligence of defendants. At the close of plaintiff's evidence, the court gave an instruction directing a verdict for defendant Caradine Hat Company, and plaintiff took an involuntary nonsuit as to said defendant with leave to move to set the same aside. The jury returned a verdict for plaintiff against defendant Laclede Real Estate and Investment Company for $15,000. On its motion for a new trial, a *remittitur* of $5000 was ordered. The *remittitur* was made and judgment was entered in favor of plaintiff and against defendant Laclede Real Estate and Investment Company for $10,000 and the cause dismissed as to defendant Caradine Hat Company. Plaintiff in due time moved to set aside the nonsuit and for a new trial as to defendant Caradine Hat Company (hereinafter referred to as Hat Company). The motions were overruled and plaintiff appealed from the judgment of dismissal as to said defendant. Defendant Laclede Real Estate and Investment Company (hereinafter referred to as Investment Company) appealed from the judgment rendered against it. The two appeals have been consolidated, since there is only one case and there can be only one final judgment disposing of the cause as to all parties.

We shall refer to the parties as plaintiff and defendants. Plaintiff's evidence tended to show that at about 2:30 P. M., June 27, 1939, he was seated upon a wooden box at the northwest corner of a seven story building located at the southeast corner of Fourth and Market streets in the City of St. Louis. The box was against the building on the sidewalk on the Fourth street side, and about even with the building wall and sidewalk on Market street. Plaintiff was watching workmen in Fourth street, who were operating electric hammers and electric air drills, drilling in the concrete, taking up stone, loading trucks, and building a street car track in Fourth street. He was injured by a piece of terra cotta which fell from the building wall above the sidewalk, and struck him on the head, right shoulder and hand. The piece was irregular in form, 18 or 20 inches by 10 inches and 6 or 7 inches high, running to a point. It showed a fresh crack 3½ inches in length, but the rest was covered with dust and dirt. The pictures and other evidence tended to show that the piece which fell was part of a block of terra cotta next to the corner in the second story sill course, trim, or cornice. These blocks were set in the wall and also extended out some distance from the face of the wall.

Plaintiff's petition alleged that the defendants and each of them owned, operated, leased, rented and maintained the exterior and interior of the building and charged, generally, that the piece of

terra cotta fell as a direct and proximate result of the negligence and carelessness of defendants. The answers of both defendants were general denials.

Plaintiff offered in evidence an original lease, dated July 26, 1934, for a ten-year term from August 1, 1934, to July 31, 1944, duly executed by defendant Investment Company, as lessor, and defendant Hat Company, as lessee, and covering a lot 200 by 150 feet at the southeast corner of the intersection of Fourth and Market streets, "together with the seven story and basement building located on the north 125 feet, more or less, of the lot." This lease is the only evidence in the record to support plaintiff's allegation that the defendants and each of them owned, operated, leased, and rented the building. The terms of the lease are important.

The aggregate rental, which lessee agreed to pay lessor, for the premises was $194,750, payable in installments, with a payment of of $1,798.33 acknowledged. The building was leased for the sole purpose or business of manufacture and sale of hats and kindred merchandise, and any other business not more hazardous or damaging to the building, or which did not interfere with auction sales held on the seventh floor. The vacant lot was leased for parking automobiles and for filling station purposes. The lease was not assignable without the written consent of the lessor, except on certain conditions, with permission granted as to particular subrentals on particular conditions.

The lessee agreed to accept the building in its then condition. Permission was granted for certain specific changes in the building, but lessee was not to cut into any column or weaken the structure. Lessee was required to furnish lessor the plans and specifications for such changes. Lessee agreed to paint the exterior wood and metal work in 1934. Lessor agreed that it would, at its own expense, keep the roof, gutters and down-spouts in good repair during the term, and would paint the exterior wood and metal work in 1938 and 1942. In case lessor failed in its obligation, provision was made so lessee could do this work at lessor's expense. All other alterations and repairs which lessee deemed necessary to make during the term were to be made at the expense of the lessee. All plate glass was at the risk of lessee and was to be replaced if broken. Permission was granted for certain specified signs, but the lessor reserved the right to prescribe the form, size, character and location of any and all other signs to be placed upon any portion of the building. Painting on the building itself was prohibited. Lessee agreed to use care and reasonable diligence to protect the property during the term.

The lessee agreed to keep the premises in good order and repair and free from any nuisance or filth upon or adjacent thereto. The lessor reserved the right to enter upon said premises for the purpose of examining the condition thereof and making any repairs it saw fit to make.

At the termination of the lease the lessee was "to surrender the premises in as good condition as received, ordinary wear and tear excepted." It was agreed that the "lessor should not be liable to the said lessee or any other person, including employees, for any damage to person or property caused by acts of God, water, rain, snow, frost, fire, storm and accidents or by breakage, stoppage or leakage of water, gas, heating and sewer pipes or plumbing upon, about or adjacent to said premises."

In case the building was partially destroyed or rendered unfit for occupancy, lessor agreed to repair same with all reasonable speed. In case of total destruction, or damage to the extent that the building could not be repaired or rebuilt in 120 days, either party could elect to terminate the lease. The lease contained provisions for forfeiture on certain conditions and provisions in case of sale by the lessor. The provisions are very detailed.

At the close of plaintiff's evidence and after defendant Hat Company's peremptory instruction was read to the jury, plaintiff took an involuntary nonsuit as to said defendant. Defendant Investment Company then offered its evidence. In view of the conclusions we have reached, it will not be necessary to review this evidence.

 Plaintiff, as appellant, contends that the evidence was sufficient to make a case against the Hat Company and the court erred in directing a verdict for said defendant. Plaintiff relies upon the case of Walsh v. Southwestern Bell Telephone Company et al., 331 Mo. 118, 52 S. W. (2d) 839. Both defendants cite the same case. In the Walsh case, plaintiff sued for personal injuries caused by the fall of a plate glass window upon her from a building as she was passing the building on the sidewalk. Both the tenant (under a lease) of the offices from which the glass fell, and the owner (lessor) of the building were made defendants. The petition charged that defendants maintained the window and carelessly and negligently caused and permitted it to fall out and injure plaintiff. Each defendant denied that it "negligently maintained" the glass window. The cause was submitted under the res ipsa loquitur doctrine against both defendants. The jury found for the tenant, but returned a verdict for plaintiff against the owner. The trial court granted plaintiff a new trial, as against the tenant, and the owner a new trial, as against plaintiff. Both the tenant and plaintiff appealed, but the orders granting the new trials were affirmed. On appeal the owner contended the new trial was properly granted to it, because there was no substantial evidence to support the verdict against it, since plaintiff submitted her cause under the res ipsa loquitur doctrine and the proof showed she was injured by glass which fell from premises occupied by the tenant. The owner further contended that it had no duty to make repairs since that duty was upon the tenant in possession. The opinion reviewed the authorities at length, and then said

(331 Mo. 118, 129, 52 S. W. (2d) 839): "The law certainly is that the owner of property who leases it to a tenant in a dangerous or defective condition is liable to a third person receiving injury because of such defect, though the property be at the time under lease and in possession of the tenant with an agreement, express or implied, that the tenant shall make repairs or keep the property in repair. 'The rule in such cases is that the "landlord's liability in respect of possession, are in general suspended as soon as the tenant commences his occupation. But when injuries result to a third person from the faulty or defective construction of the premises, or from their ruinous condition at the time of the demise, or because they then contain a nuisance, even if this only becomes active by the tenant's ordinary use of the premises, the landlord is still liable notwithstanding the lease." [Taylor, Landlord and Tenant. (8 Ed.), sec. 174.]' "

The court held that upon the facts and circumstances in evidence, the glass having fallen without any apparent or known cause, an inference could be drawn that the fall of the glass was due to some defect in the construction of the window or fastening to the frame. The court reviewed the evidence in detail (331 Mo. 118, 131, 52 S. W. (2d) 839), to-wit, the terms of the lease (which provided that the lessor reserved the right to use the exterior walls, but that all plate glass was at the risk of the lessee, and all repairs to the demised premises were to be made by the lessee), the fact that the glass broke when or before it fell, the condition of the fastenings, the fact that other glass had broken out and repairs had been made, and that insurance was carried by the tenant, the fact that the glass fell while the tenant was absent, the conflict in the evidence of the defendants, and held the evidence sufficient to sustain the verdicts. The court further held that the demurrer to the evidence, as to each defendant, was properly overruled, and that the evidence was sufficient to make a case against either ██ or both of the defendants. The court held that the liability of the respective defendants depended, in part at least, on different findings or inferences of fact and that the instructions submitting the cause against the respective defendants must recognize the fact that one was owner and lessor and the other tenant and the basis of liability of the one was different from the other.

The Hat Company (lessee), as respondent, concedes that the facts in the Walsh case made a submissible case against the tenant, but says that the covenant with reference to plate glass, which caused the injury, made the tenant liable and that the facts here are different. It contends that res ipsa loquitur cannot be invoked here because of "divided responsibility" in this case; that the lease in evidence here, while ostensibly a lease for a lot and building, contains such reservations that it is hardly a lease; that plaintiff wholly failed to show that this defendant had "either the control or the right of control of

the instrumentality causing the injury;'' that it did not have control of the walls, and could not repair them without the written consent of the lessor; that, under the terms of the lease, control of the property, by reasons of the reservations, was retained in the lessor; that clearly it (Hat Company) did not have exclusive control; that two ''controls'' could not co-exist and, therefore, there could be no *res ipsa loquiur* case against this defendant. Reference is made to the lease; ''Lessee covenants that neither in making the repairs and alterations necessary to fit the demised premises for any business hereinabove mentioned, nor for any other purpose ⸱ . . will it, or will it allow anyone to, without the written consent of lessor hereinafter obtained, (a) bore into any column, beam, or other part of the demised premises . . ⸱ . or (d) do anything which will in anywise weaken the structure of the said building.'' Attention is called to the restrictions against signs on the outside of the building and to the prohibition against painting on the building itself. Reference is made to a statement in McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, 559, as follows: ''In general and on principle the doctrine *res ipsa loquitur* does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence.'' It is contended that under this rule the *res ipsa loquitur* doctrine may not be invoked against the Hat Company; that the fall of the terra cotta was not due to any use of the premises by the Hat Company; and that there was no proof the Hat Company was actually in possession of the premises when the piece of terra cotta fell.

We think the evidence in the record was sufficient to make a submissible case for plaintiff as against the Hat Company and that the doctrine of *res ipsa loquitur* was applicable to defendant Hat Company. Plaintiff offered in evidence the written ten-year lease from the Investment Company to the Hat Company covering the real estate and improvements. We assume that plaintiff intended to rely upon the rule that where the existence of a certain condition or state of affairs of a continuous nature is shown, the general presumption arises that such condition or state continues to exist, until the contrary is shown by either direct or circumstantial evidence, so long as is usual with conditions or things of that particular nature. [King v. Missouri Pacific Ry. Company (Mo.), 263 S. W. 828, 833.] By the terms of the lease, lessee expressly agreed to keep the premises in good order and repair, except as to roof, gutters and down-spouts, which lessor agreed to maintain. All other alterations and repairs (except to the roof, et cetera) which the lessee deemed necessary to make during the term, were to be at the expense of the lessee and these repairs

were to remain a part of the realty. From the evidence the jury could infer and find that the relationship of lessor and lessee under the terms of the lease continued; that the Hat Company had the exclusive right of occupancy and control specified in the lease; and that possession was in the lessee, who had the right of possession and control, under the terms of the lease. In any case the lessee, under the terms of the lease, had the exclusive right to occupy and use the premises. No use was reserved for the lessor, although lessee was limited and restricted in its use of the premises. The reservations in the lease did not interfere with the rights granted to the Hat Company, or with the duties imposed upon it by the lease, or with the performance of its duties to plaintiff imposed by law as a result of the right of control over the building and walls, which right was vested in the Hat Company. The Hat Company had control under the lease. Could the lessor have rented sign space to others on the building walls or leased the walls of the building for any other purpose? Certainly not, because of the lease to the Hat Company. There was no evidence from which an inference could be drawn that a repair of the wall would have required any boring into the premises or the cutting of any column or beam or the weakening of the structure or that such repair was restricted or prohibited by the terms of the lease. On the other hand the lease contemplated and required repairs by the lessee.

Upon the evidence, the piece of terra cotta fell for no apparent or known cause. The work in progress in the street was not shown to have been unusual. The fall of the piece of terra cotta to the sidewalk was an unusual occurrence, one which in the ordinary course of things does not happen where due care is exercised. The Hat Company had a lease on the building and had both the duty to repair and maintain, and the exclusive right to occupy, use, manage, and control under the terms of the lease. Plaintiff was on the public sidewalk beside the building. These facts were sufficient from which an inference of negligent maintenance could be drawn against defendant Hat Company. The court erred in directing a verdict for defendant Hat Company. [Walsh v. Southwestern Bell Telephone Company, supra; Pandjiris v. Oliver Cadillac Company, 339 Mo. 711, 98 S. W. (2d) 969, 973; 45 C. J. 1193, sec. 768.] As to tenant's liability, generally, see 32 Am. Jur. 695, sec. 817; 25 Am. Jur. 665, sec. 369; 7 A. L. R. 211.

 The Investment Company (owner-lessor), as appellant, contends that the court erred in refusing to direct a verdict in its favor at the close of all the evidence; that the court erred in directing a verdict for the Hat Company, to the harm and prejudice of the Investment Company; that the court erred in the giving and refusing of instructions; and that the verdict is excessive.

The Investment Company's position is well stated in 36 C. J. 239,

sec. 948, as follows: ''Where a lessor has given up full control and possession of the demised premises and appurtenances thereto to a tenant, and at the time of the letting the premises were not in a dangerous condition due to defects in construction or to a continuing nuisance thereon, the lessor is not liable for personal injuries to a stranger due . . . to the defective condition of the premises occurring after the beginning of the lease. . . . Thus, a landlord will not be liable for personal injuries sustained by a passenger on the sidewalk from the falling of portions of the building leased to the tenant by reason of its lack of repair, such as a cornice, window glass, skylights, blinds, or like material.''

The rule is stated in 16 R. C. L. 1063, sec. 584, as follows: ''In the case of injuries to third persons resulting from the condition or use of leased premises, it is the general rule that prima facie the breach of duty, and therefore the liability, is that of the occupant and not of the landlord, and that in order to render the latter liable, more must be shown than merely that the premises on which or from which the injury arose were by him leased to another.''

The Investment Company contends that it had been out of possession for nearly five years; that it had no exclusive possession, management or control of the building walls; that the Hat Company had the exclusive occupancy and physical possession of the building and walls; that the Investment Company was under no duty, contractual or otherwise, to keep the walls of the building in repair; that it was not liable to the plaintiff for negligence in failing to maintain the premises in a reasonably safe condition, absent the existence of a nuisance at the time of letting, the duty to repair being on the tenant in possession; and that there was no evidence of the existence of such a nuisance or evidence from which such an inference could be drawn. It contends that the failure of the block to fall for five years conclusively shows the building was not dangerous when rented.

The Investment Company further contends that the doctrine of *res ipsa loquitur* is not applicable to it; that the facts do not make a case of negligence against it under the *res ipsa loquitur* doctrine; that the inference of negligence under the *res ipsa loquitur* doctrine can only be drawn against the party in actual possession; and that there can be no inference or presumption of negligence as to any person who does not have the exclusive management and control of the thing or instrumentality which caused the injury complained of. In support of its position the Investment Company cites Powell v. St. Joseph Railway, Light, Heat and Power Company, 336 Mo. 1016, 81 S. W. (2d) 957, 960 (a passenger and a carrier case), and other cases. We think this, and the other cases cited, have no application here, since the liability, if any, of the Investment Company to plaintiff does not arise from exclusive possession, management or control of the building, but upon other facts in evidence from which an inference

of negligence and liability may be drawn against the Investment Company, although it was out of possession and its tenant was in exclusive possession. Of course, an inference of negligence under the *res ipsa loquitur* doctrine, which is based solely upon exclusive possession and control of the injuring agency, can only be drawn against the party in the exclusive possession and control of that agency, but that does not exclude a *res ipsa loquitur* case against another defendant upon different facts. [Walsh v. Southwestern Bell Telephone Company, supra.] The Investment Company seeks to distinguish the Walsh case because in that case the lessor reserved the right to use the exterior walls and the lessee had only part of the building and because there was evidence as to the construction of the window and that glass had broken before. We think the differences immaterial. In support of its theory of non-liability, the Investment Company cites cases based upon specific assignments of negligence and where there was a failure of proof. [See Rice v. White (Mo.), 239 S. W. 141; Kilroy v. City of St. Louis et al., 242 Mo. 79, 145 S. W. 769.]

In support of its theory that an inference of negligence can only be invoked against the party in possession, the Investment Company cites 45 C. J. 1214, sec. 780, as follows: "Where either one of two defendants wholly independent of each other may be responsible for the injury complained of, the rule of *res ipsa loquitur,* in accordance with the preceding principles, cannot be applied. However, the doctrine may be availed of as against plural defendants who were, under the circumstances involved, joint tort-feasors." In support of its last statement the above authority cites, Duerr v. Consolidated Gas Company, 86 App. Div. 14, 26, 83 N. Y. 714. Where a large tank, constructed by independent contractors according to the plan of the owner, was, before delivery to the owner, filled with water at the direction of contractors to test whether it was water tight, and, while thus filled with water, it burst causing injuries to plaintiff who was at work on the premises nearby, the doctrine of *res ipsa loquitur* was applied to both the owner and the contractor. In that case the court said (83 N. Y. Supp. 714, 721): "It (the doctrine of *res ipsa loquitur*) was applicable to the owners on account of their ownership, possession of the premises, and supervision of the work; and it was applicable to the contractors because they constructed the tank, participated in filling it with water, and were in charge of the work."

Although, under the terms of the lease, the Hat Company had the exclusive right to occupy, use and control the building and leased premises to the extent of the rights therein granted, the Investment Company reserved the right to enter the premises for the purpose of examining the condition thereof and to make such repairs as it might see fit to make. The evidence, including the lease and pictures, was sufficient for the jury to find that the Investment Company owned the

building and had leased it; that plaintiff, seated on a box on the sidewalk adjacent to said building, was injured when a piece of terra cotta fell and struck him; that only part of the block fell; that a part of the break was fresh and a part of it was old and stained by weather; that part of the piece that fell had extended out from the face of the building wall, over the sidewalk, and a part had been set in the wall; and that the piece broke off and fell for no apparent or known cause. We think the doctrine of *res ipsa loquitur* applicable here and that these facts were sufficient from which the jury could infer and find negligent maintenance by defendant Investment Company and a breach of its duty to plaintiff; that the piece of terra cotta fell by reason of defective design, plan or construction of the building or the unsuitability of the materials; that plaintiff's injury resulted from the permanent condition of the building (not the use thereof by the tenant); and that the conditions causing the injury existed at the time the building was leased to the Hat Company. If the jury found these facts, defendant Investment Company could not escape liability to plaintiff, even though the premises were in the exclusive possession of a tenant who had expressly agreed with the landlord to keep the premises in repair. [Walsh v. Southwestern ▇▇▇ Bell Telephone Co., supra; Howard v. Central Amusement Company, 224 Mass. 344, 112 N. E. 857, 7 A. L. R. 195; 45 C. J. 1200, sec. 771.] As to owner's liability for injuries to third parties caused by leased property, see Fehlhauer v. City of St. Louis, 178 Mo. 635, 646, 77 S. W. 843, 845; Roper v. Wadleigh (Mo. App.), 219 S. W. 982, 984; 25 Am. Jur. 663, sec. 368; 25 Am. Jur. 667, sec. 371; 32 Am. Jur. 699, sec. 822; 45 C. J. 1200, sec. 771.

The credibility of defendants' evidence as to the effect of vibration, weathering and lapse of time upon good materials; and that terra cotta was a suitable building material, and the design and construction of the building and the use of terra cotta proper, were matters for the jury. That the injury resulted from the tenant's failure to repair property not dangerous when leased, was a matter of defense.

We think that the rules of law, applicable here, to both lessor and lessee, are well stated in a note in 7 A. L. R. 204, 210-211 as follows: "The owner of a completed building which adjoins a highway is liable to a person passing in the street who may be injured by the falling of any part of the structure, although the premises are in possession and under exclusive control of a tenant, if the building by reason of faulty and negligent construction, or the use of improper and unsuitable materials, or for any other reason is, when leased, in such condition that it is liable at any time to fall of its own weight. Such a condition constitutes a nuisance, and it is not material that the building was not constructed by the owner or that the tenant has obligated himself to repair. . . .

"The lessee of a completed building which adjoins a highway is prima facie liable to passers-by who may be injured by the fall of the structure, or any part thereof, if the building, or the part falling, is under his exclusive holding in the lease. And he owes a duty to the public to use ordinary, reasonable care in the management and use of the building. If the condition of the premises when leased is such as to constitute a nuisance, it is his duty to remedy the defects, and if he does not do so he is guilty of continuing a nuisance, and the tenant, as well as the landlord, is liable for any injuries which may be caused thereby to a person lawfully in the highway."

▆ Were defendant Investment Company's rights prejudiced by the instruction read to the jury directing a verdict for defendant Hat Company? May defendant Investment Company complain thereof? We have seen that plaintiff's evidence made a submissible case under the *res ipsa loquitur* doctrine against both defendants. One or the other or both defendants might be held liable to plaintiff depending upon the jury's finding of the facts. [Walsh v. Southwestern Bell Telephone Company, supra.] There is no suggestion in evidence or argument that plaintiff was at fault in any way or that the piece of terra cotta did not in fact fall and injure the plaintiff. Each defendant denied liability below and, in briefs and arguments here, each seeks to place the full responsibility on the other.

In argument the Investment Company contends that upon the plaintiff's evidence the jury could find that it was out of possession; that the Hat Company was in possession, occupancy and control of the building and had been for five years; that the Hat Company was responsible for the repairs and maintenance of the premises, regardless of the terms of the lease; and that the fall of the piece of terra cotta was due to the Hat Company's failure to repair and not due to conditions at the date of the lease, and, therefore, the Investment Company's rights were prejudiced by the instruction directing a verdict for the Hat Company. It is contended that the giving of the instruction directly affected the Investment Company's liability to plaintiff, its rights of contribution from defendant Hat Company and against the Hat Company under the lease; that the instruction destroyed and extinguished its defense that the Hat Company was liable, if anyone was; and that the instruction, in effect, directed a verdict against the Investment Company. Plaintiff says Investment Company may not complain since the instruction in no way affected Investment Company as to its defenses, if any it could prove.

Under the facts in evidence, we have held that, as to plaintiff, the court erred in directing a verdict for defendant Hat Company and, under the circumstances of this case, we think it was also error as to defendant Investment Company and that the defendant Investment Company's rights were prejudiced by the action of the trial court. As between ▆ the defendants, their rights in certain re-

spects were fixed by the terms of the lease. The condition of the wall at the time the lease was made, was in issue. The facts were such that the jury could find for or against either, could find both liable, or both not liable. The petition charged joint and several liability. There was a basis in the evidence for a defense by the Investment Company that the Hat Company was *solely* liable for the falling of the piece of terra cotta from the wall which defendant Hat Company was under a duty to maintain, that is, the evidence was such that an inference could be drawn that the fall of the piece of terra cotta was due *solely* to a defective and unsafe condition which arose subsequent to the letting, while the premises were in the possession and control of the Hat Company and for which condition the Investment Company was not responsible. It was error, therefore, against the Investment Company to direct a verdict for the Hat Company and we are not called upon to decide whether it would have been error if only a case for joint liability had been made against the defendants. When the court directed a verdict for the Hat Company, the Investment Company's defense that the piece of terra cotta fell *solely* because of negligence of the Hat Company was effectively cut off. The rule is that a defendant can complain of instructions given at the request of a codefendant which affects the question of his liability to plaintiff. [Story v. People's Motorbus Co., 327 Mo. 719, 37 S. W. (2d) 898; Barr v. Nafziger Baking Co. et al., 328 Mo. 423, 41 S. W. (2d) 559, 563; Gabelman v. Bolt et al., 336 Mo. 539, 80 S. W. (2d) 171, 172; Nevins v. Solomon et al. (Mo. App.), 139 S. W. (2d) 1109, quashal of opinion on certiorari denied, State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 S. W. (2d) 836.]

The cases dealing with the right of a defendant to complain of an instruction given by a codefendant which affects the defendant's liability to plaintiff are fully reviewed in the case of State ex rel. Nevins v. Hughes, supra.

From the conclusions we have reached, it is unnecessary to consider the other assignments of error. The judgment as to each defendant is reversed and the cause remanded for further proceedings not inconsistnt with this opinion. *Hyde* and *Bradley*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.