[1] The respondent Billie Biggs, as plaintiff below, brought suit against T. B. Crosswhite, the appellant, and James Homer Dial, for damages claimed to have been received by him as a guest in an automobile operated by defendant Dial when it collided with a truck belonging to said T. B. Crosswhite. At the close of plaintiff's evidence the court directed a verdict in favor of defendant Dial, and at the conclusion of the whole case the verdict of the jury was in favor of the plaintiff and against the defendant T. B. Crosswhite for *Page 516 
$3115, and in favor of the defendant Dial. Defendant T. B. Crosswhite has appealed.
[2] The substance of plaintiff's petition was that on the evening of June 9, 1947, he was riding as a guest in an automobile owned and operated by defendant Dial along U.S. Highway No. 40; that their destination was a store and filling station at Ridge Prairie in Saline County, Missouri, a mile or so to the west; that as they approached the store from the east, defendant Dial negligently failed to keep his car as far to the right side of the highway as practicable, and that at such time the defendant Crosswhite's truck, operated by his agent and servant, approached from the west and negligently and carelessly caused the truck to run into and against the automobile in which the plaintiff was riding and causing the injuries alleged. It was further alleged that Crosswhite was operating his truck at an excessive and dangerous rate of speed; that he failed to use the highest degree of care to drive the same so as to prevent injuries to others, failed to keep a reasonably careful and vigilant lookout; failed to operate his truck as far to the right-hand side of the highway as practicable, and drove the same to the left of the center of the highway; failed to turn his truck to the right so as to pass the automobile without interference, and after the plaintiff came into a position of imminent peril the operator of said truck, by the exercise of the highest degree of care, could have slackened the speed of the truck or changed its course and prevented said collision and injuries. Plaintiff alleged that he was thrown against the automobile with such force as to become permanently injured, bruised and lacerated in the respects described, and compelled to incur certain expenses.
[3] Defendant Crosswhite filed answer to the plaintiff's petition and a cross-claim against the defendant Dial. In the answer he denies the alleged negligence on his part, admits the charge against defendant Dial, and alleged that plaintiff's injuries, if any, were due solely to the negligence of defendant Dial in failing to keep an adequate lookout for other vehicles, in failing to operate his automobile as far to the right-hand side of the highway as practicable, and to the fact that defendant Dial, having pulled his car across the left-hand side of the highway, negligently turned his automobile back across said highway, and directly in front of said truck and in the path thereof, thereby solely causing the collision and resulting damages.
[4] The cross-claim of defendant Crosswhite against Dial alleged, in substance, the same acts of negligence on the part of the defendant Dial as contained in the answer, and alleged property damage to the truck by such negligence of the defendant Dial in the sum of $4,736.19.
[5] Thereafter defendant Dial filed an answer to the plaintiff's petition and a cross-claim against defendant Crosswhite. In the answer defendant Dial admitted that plaintiff was an occupant in his automobile at the time and place in question, but denied the allegations of any negligence on his own part. As a cross-claim against defendant T. B. Crosswhite, defendant Dial alleged that the collision was caused solely by the negligence of the agent and servant of defendant Crosswhite in operating said truck, which negligence consisted in failing to exercise the highest degree of care, operating the truck at a high and dangerous rate of speed, failing to keep a reasonable and vigilant lookout; failing to keep his truck as far to the right-hand side of the highway as practicable, and operating the truck left of the center of the highway as it approached and ran into the automobile of defendant Dial. It was further alleged that after Dial had come into a position of imminent peril the operator of said truck, by the exercise of the highest degree of care, could have prevented said collision by slackening his speed or changing the course of said truck. The defendant Dial set forth alleged damages of $9600.
[6] After the filing of the above pleadings, the court, on plaintiff's motion, ordered a separate trial of the plaintiff's petition. Thereafter plaintiff filed a reply to the separate answers of the defendants in the nature of a general denial of allegations of new matter. Defendant Crosswhite *Page 517 
thereafter filed an amended answer and cross-claim similar to his previous pleadings.
[7] Upon the trial of the cause and at the close of plaintiff's evidence, defendant Dial filed a motion for a directed verdict in his favor, which was by the court sustained, over the objection of defendant Cross-white. An instruction was accordingly given to the jury directing a verdict in favor of the defendant Dial. Thereupon defendant Crosswhite filed a motion that he be permitted at that stage of the proceedings to try also his cross-claim against the defendant Dial, for the reason that otherwise he would be denied the right and privilege of asserting his claim against defendant Dial and would be denied the right of having Dial as a party defendant in the action of plaintiff as against both defendants. This motion was overruled. Thereupon defendant Crosswhite filed a motion asking the court to permit him at that time to file a petition as a third party plaintiff, making defendant Dial a third party defendant, for reasons, in substance, the same as the grounds for his former motion to try his cross-claim. The motion to file a third party petition was overruled by the court and the trial proceeded. At the close of the trial, among the instructions given for the defendant Crosswhite, was one marked D-9, telling the jury, in substance, that if the conduct of defendant Dial was negligent and was the sole cause of the collision, and that the collision was not due to any negligence of Crosswhite, the verdict must be for defendant Crosswhite. The verdict of the jury was in favor of the plaintiff against defendant T. B. Crosswhite for physical injuries in the sum of $3000 and for hired help, medical, doctor and hospital bills in the sum of $115, making a total of $3115, and the jury further found in favor of the defendant James Homer Dial. After motion for new trial filed by defendant Crosswhite, the same was overruled and that defendant perfected his appeal.
[8] Defendant Dial has also filed his brief herein, in the nature of a respondent's brief, on the theory that he is interested in the pending appeal for the reason that should the appeal of the defendant Crosswhite be successful, it would authorize a resubmission of plaintiff's case against Dial and "would present the anomalous result of permitting the plaintiff Biggs to try an issue that has been determined adversely to him; one which is now a final judgment, and a final judgment from which the plaintiff has not appealed".
[9] Appellant's first point is that the court erred in giving the instruction for a directed verdict in favor of defendant Dial at the close of plaintiff's evidence, for the reason that, in fact, plaintiff did make a submissible case against Dial for failing to drive as near the right-hand side of the highway as practicable. A review of plaintiff's evidence as it pertains to this aspect of the case thus becomes necessary. Defendant Dial's ten year old daughter testified that during the trip her father had driven on the side of the highway "he was supposed to"; that when her father first saw the approaching truck "it was half way from the school house to the store"; that "he started to turn in and couldn't make it, so he turned back on his side and the truck came over and hit him"; that when he pulled over to his side of the slab the truck was by the gravel driveway in front of thestore; that Dial had barely got over to the left of the center of the highway, and when he was hit he was on the side of the road "he was supposed to be on".
[10] The testimony of the plaintiff was meager. He related how Dial, a neighbor and friend, had invited him to ride to the Ridge Prairie store. He remembered nothing after Dial, approached their destination except that Dial had been driving carefully on the right-hand side of the highway at about 30 miles an hour. He was rendered unconscious by the collision.
[11] W. H. Southard, a witness for plaintiff, testified that he and two other men were sitting on the porch of the store when he heard a noise, saw the car and truck about 8 feet apart on the north (plaintiff's right hand) side of the highway, and saw them collide there, right in front of the store site, or a little east. The car was completely turned around by the impact *Page 518 
and the truck continued northerly across the ditch and stopped near a fence north of the highway. He said the car was struck on its left front fender.
[12] Charles Cramer, owner of the store, one of those sitting in front of the store, saw Dial pull over to the left side of the road to about two feet beyond the center and then turn back to the other side, and that the truck was then about 100 feet westof Dial's car; that the driver of the truck was blowing his horn and was turning to the north side of the road from which Dial had turned and to which Dial was returning. He said it looked like the right side of Dial's car got over and beyond the north of the slab when it came to a stop and the collision occurred. The witness later repaired the car, and he said he believed the truck hit the car on its right front, spun it around and in that manner crushed the left front fender and side of the car.
[13] Defendant Dial, called as a witness by the plaintiff, told of inviting his nearby neighbor and friend to ride in the witness' car with him and his two little girls to Ridge Prairie store. He described the store as a combination of garage, store and filling station, with a "fairly" large gravel driveway in front, abutting the highway on the south, the garage being east of the store, and that usually a few cars are parked in front of the garage for repair; that on the evening in question there were a truck, a bus and several cars sitting near the east end of the driveway; that the slab on Highway 40 is 24 feet wide; that as he approached the store from the east and started to turn in, there was a truck approaching from the west 435 steps or 1305 feet distant, coming downgrade. He later had stepped it off. He noticed the bus standing on the east end of the store driveway and the lights on the approaching truck were blinking, and witness turned his car back "to my side of the road"; that when he pulled back over to the north or his (right) side of the road the truck was 160 steps or 480 feet distant and the truck then came "right on down the road and angled across on my side." Witness said he then stopped his car, as it looked as if the truck would pass across in front of him and into the ditch, but it twisted back and ran into the witness' car. He said the truck hit the car on the left front fender and bumper, completely turning it around.
[14] On cross-examination, Dial said the gravel driveway in front of the store, garage and filling station abutting the highway slab on his left or south side was 60 steps long, not counting the strips thereof at each end along the shoulder of the slab. The garage was 20 feet east of the store. It was 14 feet from the store to the gasoline pumps, and 18 feet from the pumps to the highway slab. The slab was 24 feet wide. He said there was nothing to obstruct his view down the highway to the west; that there were no other cars approaching except the truck; that when he started to turn left off the slab he turned at the east end of the gravel driveway near where the bus was standing and had slowed down from 30 to 20 miles an hour. He testified that when he was ready to turn he saw the truck approaching, then 435 steps distant, and then he traveled about five feet in the direction of the store when he turned back toward the right-hand or north side of the highway. He said his car was standing directly east and west on the right-hand side of the road when it was hit on the front left fender by the truck. He said he had traveled 10 feet in returning to the north side of the road. The truck, he said, swung over to the north side when the witness did.
[15] "Q. Mr. Dial, the whole of the west part of that driveway in front of the Ridge Prairie store was open, wasn't it? A. I don't know. I didn't get a chance to see it.
[16] "Q. There was nothing in your way there or beyond the gas pumps and those cars? A. I don't think so, —
[17] "Q. Nothing to have kept you from going on across in front of the store? A. Only this truck coming down the road". (Italics supplied.)
[18] He said when he started to cut back the truck was 480 feet away, and while he traveled 10 feet to the north side, the truck traveled 480 feet to the point of *Page 519 
collision. He said the truck was traveling 55 to 60 miles an hour and did not appear to slow up, and had room enough to have passed safely on the south side of the slab. He admitted that when talking to a representative of an insurance company the next day he said: "I had turned toward the store, made an effort to turn in" and that "I couldn't get in the driveway and I turned back to my side of the road".
[19] A highway patrolman testified that Dial told him the next day that "he had started to make a left turn into Ridge Prairie store, and he couldn't finish the turn because the bus was parked in the driveway so he cut back to his right, and that the truck ran into him".
[20] It is true that defendant Dial was only charged in the petition with negligent failure to keep, drive and operate his automobile at the time in question as far to his right side of the highway as practicable. This statutory "rule of the road", Sec. 8385(b), R.S.Mo. 1939, Mo.R.S.A., is not confined to the exact point of collision, but would embrace the entire course of departure from and return to the right-hand side of the road where such deviating course is shown likely to have caused confusion in the minds of drivers of approaching vehicles as to the ultimate course of the car so deviating and thus causing or contributing to the cause of the collision. Under similar facts we said in LaPierre v. Kinney, 225 Mo.App. 199, 19 S.W.2d 306, 310: "If it (a motor vehicle) moved to the wrong side of the street, and the accident occurred as a result of the confusion and uncertainty in the mind of an approaching car driver as to its ultimate adjustment of position, then we think it can be said that the accident was a `result thereof,' that is, of being on the wrong side, even though the actual impact occurred when the front ends of the two cars were west of the center of the street."
[21] Again we said in Roberts v. Atlas Life Ins. Co., 236 Mo.App. 1162, 163 S.W.2d 369, 373: "The statutory requirement, (R.S.Mo. 1939, § 8385(b)), that cars be driven as close to the right hand side of the highway as practicable cannot be confined and limited to the point of actual collision."
[22] Plaintiff's proof contained substantial evidence tending to establish negligence on the part of defendant Dial in failing to keep, drive and operate his car as far as practicable on the right-hand side of the highway. In that connection it was for the jury to determine, under the evidence, if the conduct of the defendant Dial was negligent in turning from the right side of the highway to enter upon the property left of the slab at a point where standing vehicles would obstruct or delay his entrance and thereby expose his car to collision with approaching traffic from the west; or was negligent, under the conditions, in proceeding as far as 5 feet onto the left-hand side of the slab before turning back to the right-hand-side of the highway; or was negligent, under the conditions, in leaving the right-hand side of the highway to make a left-hand turn across the highway at a time when the approaching truck was so close, or traveling at such speed as to render a collision probable; or was negligent in failing to await the passage of the truck before attempting to cross over the left-hand side of the highway; or whether such conduct upon Dial's part forced the driver of the approaching truck to turn to the left, where the collision took place; and it was for the jury to determine if Dial's negligence, if any, in any of the above respects, was the sole cause of the collision. We conclude that plaintiff made a submissible case against defendant Dial and for that reason the court erred in directing the verdict in his favor at the close of plaintiff's evidence.
[23] The next question is, can the appellant, a codefendant of Dial, complain of the error in directing a verdict in favor of his codefendant Dial? The appellant maintains that the error of the court in directing such verdict in favor of Dial, at the close of plaintiff's case, prejudiced appellant in making his sole cause defense, pleaded in his answer. Appellant agrees that "if in fact plaintiff failed to make a case against one defendant, then the court should direct a verdict for that defendant", but he strongly asserts that plaintiff did make a case against the codefendant Dial, which *Page 520 
contention we have sustained above. Appellant contends that when Dial was erroneously permitted to drop out of the case, the appellant "was faced with the task of proving defendant Dial's sole responsibility for the collision in the face of the court's ruling that he was not negligent at all", thus utterly destroying appellant's sole cause defense despite the instruction later given submitting appellant's sole cause defense based on Dial's alleged negligence. Respondent, nevertheless, asserts (1) that he did not make a case against Dial; (2) that appellant has no right to complain of the directed verdict for Dial; (3) that appellant was not prejudiced in his sole cause defense by the release of Dial; (4) that appellant did not raise the point in his motion for new trial; (5) that the respondent alone could complain of the directed verdict for Dial, and (6) that appellant cannot make the claim on the ground of being deprived of his right of contribution in the event of a joint judgment. We have already found that plaintiff made a submissible case against Dial. Upon reference to the appellant's motion for new trial we find that he sufficiently covered the charge that appellant's right of sole cause defense was affected. In his brief the appellant has not, in his points of error, assigned error in the giving of the instruction for a directed verdict on the ground that he was thereby prevented from a joint judgment and incidental right of contribution respecting same, and we shall not consider that point, although referred to in appellant's arguments. The remaining contentions of the respondent will be treated together in considering the point here under consideration.
[24] If Dial had been kept in the case, as we have held he rightfully should have been, the jury might not only have found a verdict against him, but possibly against him alone if the jury found his conduct negligent, as charged, and to have been the sole cause of the collision. If they believed his negligence the sole cause, then the verdict to that effect would have exonerated defendant Crosswhite, but such a verdict was rendered impossible by the court's erroneous elimination of Dial. Thus defendant Crosswhite (appellant) was clearly prejudiced by the erroneously directed verdict in favor of Dial. The error was not cured by Instruction D-9 after the close of all the evidence submitting Dial's negligence, if any, as the sole cause, since the plaintiff's evidence on that issue had thus been by the court effectively excluded from consideration. Appellant had the right, upon the issue of his own liability, to have the jury consider not only his evidence, but also the plaintiff's evidence on the question of defendant Dial's negligence, if any, and whether it was the sole cause of the collision. Instruction D-9 served only to confuse the situation.
[25] Ordinarily, a defendant in a tort case cannot complain of error committed during the trial in favor of a codefendant. This, however, has been held subject to exception where an erroneous instruction for one defendant has affected the liability and the substantial rights of a codefendant, such as in a sole cause defense. An exhaustive review of the development of this exception to the rule through the decisions of the Missouri Supreme Court is contained in State ex rel. Nevens v. Hughes, 347 Mo. 968, 149 S.W.2d 836. That case was cited with approval by the Supreme Court in Phegley v. Graham, 358 Mo. 551, 215 S.W.2d 499, 503. It was also referred to with approval in Kelly v. Laclede Real Estate Inv. Co., 348 Mo. 407, 420, 155 S.W.2d 90, 98, 138 A.L.R. 1065, where the court said: "When the court directed a verdict for the Hat Company, the Investment Company's defense that the piece of terra cotta fell solely because of negligence of the Hat Company was effectively cut off. The rule is that a defendant can complain of instructions given at the request of a codefendant which affect the question of his liability to plaintiff (citations)."
[26] We rule, therefore, that the appellant has the right to complain of the error of the trial court in directing a verdict for the defendant Dial, as shown, and that such action was prejudicial to appellant.
[27] Appellant further claims error in the action of the court in refusing to permit *Page 521 
defendant Crosswhite (appellant) to file a third party petition, making defendant Dial a third party defendant, whether or not a submissible case was made against Dial. This request was made during the trial and when plaintiff had rested his case. Section 20 of the Code, § 847.20, Mo. R.S.A., relied on by appellant, permits such a petition to bring in a party not already a party to the suit and is no authority for the contention here made. Neither does Code Section 17, Mo.R.S.A. § 847.17, apply, also cited by appellant, which provides a method to add or drop parties to an action, and furthermore, to allow the request would have delayed the trial. The court did not err in refusing to allow a third party petition to be filed.
[28] Appellant next complains that the court erred in ordering separate trials of the plaintiff's case and the defendants' cross-claims, and that the rulings so made before and during the trial were erroneous. The separate trial of such claims is a matter left to the discretion of the court, and we hold that the court did not abuse its discretion in its rulings complained of Code Section 16 and 97, Mo.R.S.A. §§ 847.16, 847.97.
[29] Appellant's Point 5 is as follows: "The court committed prejudicial error in giving on behalf of plaintiff, plaintiff's Instructions Nos. P-2, P-3, P-4, and P-5". Rule 1.08 requires that the brief shall contain the points relied on, "which shall specify the allegations of error". The above is not a compliance with the rule, and we are not required to give it any consideration. Norman v. Jefferson City Coca-Cola Bottling Co., Mo.App., 211 S.W.2d 552, 557.
[30] Appellant's last point is that the verdict is excessive. Since this case must be retried on its merits, we deem it improper to review the amount of the verdict.
[31] The judgment should be reversed and the cause remanded. It is so ordered.
[32] All concur. *Page 708