246 S.W.2d 539 (1952)
O'DONNELL
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28321.
St. Louis Court of Appeals, Missouri.
February 19, 1952.
As Modified March 14, 1952.
Mattingly, Boas & Richards and Lloyd E. Boas, all of St. Louis, for appellant.
Mark D. Eagleton, Charles M. Warner, *540 and John H. Martin, all of St. Louis, for respondent.
HOUSER, Commissioner.
This is an action for personal injuries arising out of a collision between an automobile and a public service company bus in the City of St. Louis. Plaintiff, Thomas C. O'Donnell, a guest riding in the right front seat of the automobile, joined as defendants his host Carl Wallace (the owner of the automobile) and the public service company. The trial jury returned a verdict in favor of defendant Carl Wallace and for plaintiff and against the public service company in the sum of $5,000. The company has appealed from the judgment entered on the verdict, claiming that the trial court erred (1) in overruling its motion for a directed verdict; (2) in allowing counsel for the individual defendant to make an improper argument; (3) in instructing the jury orally; (4) in approving a verdict contrary to and against the weight of the evidence; and (5) in approving a verdict which is excessive.
This was a collision between the front end of the automobile and the rear end of the bus. It occurred at approximately 8 o'clock on the morning of March 18, 1949, in full daylight, on Skinker Boulevard near Rosebury Avenue. At that point Skinker, a north and south thoroughfare, is 70 feet wide. Clayton Road, an east and west street, is approximately 2 blocks south of Rosebury and there is a "complete downgrade" from Clayton Road north to Roseburya "decided" grade. The streets were covered with ice and snow. This was a general condition. It was "slippery" "very slippery and icy." Barricades were erected, closing the Express Highway to all traffic. Skinker Boulevard was completely covered with ice and snow in the area where the accident occurred. The weather was clear and cold. Both vehicles were headed north on Skinker Boulevard.
Plaintiff testified that the left side of the automobile was about 5 feet east of the center line and the left side of the bus traveling approximately 6 feet east of the center line of Skinker Boulevard. The automobile was traveling "about 20 miles per hour." Traffic was "very heavy." At the time the Wallace automobile crossed Clayton Road there was traffic going north on Skinker, to the right of, behind and in front of the Wallace automobile and traffic moving to the south on Skinker Boulevard.
Plaintiff testified that when he first saw the bus "it had indications it was slowing down * * * it had signs of slowing down * * * it seemed to lose momentum going down * * *." Plaintiff "could tell" it was slowing down, by the momentum "* * * could see it losing momentum." Plaintiff told or "yelled" to Wallace to "watch that bus." At that time the front end of the automobile was about 60 feet from the rear end of the bus, and the automobile was traveling about 20 miles per hour, driving on ice. Wallace immediately began to apply his brakes. The automobile moved about 20 feet from the time plaintiff exclaimed "watch that bus" until Wallace started slowing down the automobile. Plaintiff did not notice whether there was a stop light on the rear of the bus, or whether the bus driver made any hand signals. He did not remember whether lights flashed on the back of the bus or not. There were no indications of a signal that the bus driver was going to stop. Plaintiff saw no signal of any kind indicating that the bus was slowing down.
When the bus started slowing down it came to a complete stop, traveling about 20 feet from the time plaintiff first noticed it slowing down until it reached a complete stop. The bus stopped about 3 feet east of the center line of Skinker Boulevard. The front of the automobile struck the rear of the bus. The automobile was traveling 15 to 20 miles per hour at the time of the impact. The automobile skidded on the ice when Wallace applied the brakes and "it was a skidding motion when that car went into the back of the bus."
Edgar D. Booker, a passenger sitting in the rear seat of the Wallace automobile, testified that when plaintiff said "watch that bus" the front end of the automobile was approximately 40 feet from the rear of the bus; that after plaintiff shouted the witness could feel the application of the brakes in the motion of the car; that after *541 the application of the brakes "we slid along and crashed into the back of the bus"; that both vehicles were 4 or 5 feet from the center of Skinker after the accident; that the automobile was traveling about 15 miles per hour when it collided with the bus; that the bus and the automobile were both traveling about 20 miles per hour when he first saw the bus; that the bus had come to a complete stop at the time of the impact; that he noticed no signals, lights or hand signals indicating that the bus was going to stop; that you could tell the bus was stopping by the momentum of the bus; that although the bus was losing momentum and slowing down it had not stopped when plaintiff called out "watch that bus"; that at that time the vehicles were approximately 40 feet apart; that it was "slick".
Mark Coleman testified for the plaintiff. He was driving an automobile in the center lane behind the Wallace automobile, traveling 20 to 25 miles per hour "at tops". He testified that the Wallace car was 30 or 40 feet behind the bus when he first noticed it; that "all of a sudden, the front end (of the bus) went just a little to the right and he must have applied his brakes for it just come to a very abrupt stop", whereupon the Ford "hit it in the back." When he saw the bus stop the witness swerved his left wheel into a snow bank in the middle of the street. This turned him around and prevented a collision with the bus or the Wallace automobile. When he came to a stop he was 20 or 30 feet behind the Ford facing south, having spun completely around. He gave as his opinion that the speed of the Wallace automobile may have checked perhaps 5 miles an hour, stating that "it was so sudden he couldn't have checked it too much", so that the Wallace car was traveling 15 to 20 miles per hour at the time of the impact. When the Wallace automobile was traveling about 30 feet behind the bus it was going 20 to 25 miles per hour, the same speed the witness' car was traveling.
Mark Coleman's wife Agnes gave testimony which was generally corroborative of the testimony given by her husband.
Marjorie Ann Hinrichs, for plaintiff, testified that she was a passenger on the bus; that there was another bus at the east curb of Skinker Boulevard and that the driver of the bus on which she was a passenger started to pass the bus at the curb; that "a man came from behind the first bus and hailed ours and then the driver of the bus that I was on came to a stop" in the lane of traffic next to the center of Skinker Boulevard; that the driver let the man board the bus; that the man "started to get on"; that she did not recall if the bus had started up or if the bus was stopped but that "just at approximately that moment we were hit from behind by a car"; that the bus was stopped "just long enough for this man to get on * * * long enough for the man to come out of the street, go up the steps of the bus and be up on the bus." She testified that the bus "came to a rather sudden stop"; that the driver "applied his brakes and saw this man running."
Plaintiff went to the jury on the theory that the stopping of the bus was so sudden and unexpected as not to give a reasonable and timely warning of intention to stop to the driver of the automobile.
Appellant claims that plaintiff's own testimony, by which he is bound, conclusively shows that defendant was not negligent; that the bus did not come to a sudden stop; that it was merely slowing down; that there was sufficient time after plaintiff observed its slowing down for him to react and warn the driver of the automobile; that at that time the vehicles were still 60 feet apart and that the bus traveled 20 feet thereafter before it came to a stop; that although plaintiff did not fix the speed of the bus, "there was no such thing as a sudden stop made by the bus", considering the speeds of the vehicles as testified to by the various witnesses, the testimony of the plaintiff with respect to loss of momentum and distances between the vehicles, and his statement that the bus was noticeably slowing down when plaintiff saw it for the first time; that plaintiff cannot take advantage of the testimony of other witnesses which is inconsistent with his own testimony.
*542 While it is true that a plaintiff in a personal injury suit is bound by the theory of liability set up by his own testimony and cannot take advantage of testimony offered by defendant's witnesses which is inconsistent and at war with his own theory of the case, which rule is announced in Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600; Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782, and other cases cited by the appellant, we are unable to find any basis upon which to apply that rule in this case. Although we have earnestly searched the record for testimony given by plaintiff which negatives the testimony of witnesses other than plaintiff that there was an abrupt and sudden stop, we are unable to find any such testimony. Nor does plaintiff, in order to make his case, depend upon evidence from defendant's witnesses which clashes with plaintiff's testimony. It is true that he stated that the bus gave "indications" and "signs" that it was slowing down and that it "seemed to lose momentum" but is it not true that in all visible stops, whether they be sudden or gradual, there are indications of a slowing down and a loss of momentum? Nor are we driven to the conclusion that there was no sudden stop by plaintiff's testimony with reference to distances, braking and speed of the Wallace automobile. According to plaintiff the bus stopped within 20 feet after plaintiff noticed that it was slowing down. Plaintiff did not fix the speed of the bus at the time he first saw it but there was evidence given by plaintiff's other witnesses (on which he could rely) from which the jury could find that at that time the bus was traveling from 15 to 25 miles per hour; that both vehicles were traveling at the same speed; that the bus came to a "very abrupt", "sudden" stop in heavy traffic 4 or 5 feet from the center line of Skinker Boulevard; that it came to a complete stop long enough for a passenger to board the bus; that no signals were given or lights turned on indicating that the bus was going to stop; that when plaintiff said "watch that bus" the front end of the automobile was approximately 60 feet from the rear of the bus; that the bus came to a stop within 20 feet after the exclamation; that the automobile was skidding and sliding at a rate of 15 to 20 miles per hour when it collided with the bus. For a bus traveling at 15 to 25 miles per hour to stop within 20 feet under the circumstances indicated is submissible evidence of a sudden stop. It was for the jury to say whether defendant did stop suddenly and whether its conduct in this regard constituted negligence. Woods v. Chinn, Mo.App., 224 S. W.2d 583, loc. cit. 586; Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, loc. cit. 248. Plaintiff's evidence was not destructive of his case and this assignment is ruled against appellant.
Appellant forcibly argues, however, that the verdict is contrary to or against the greater weight of the credible evidence. Drawing on the evidence introduced by defendant Wallace and by defendant public service company appellant argues that Wallace was "far more negligent than could the appellant have been"; that Wallace convicted himself of the "worst kind of negligence"; that Wallace was "grossly negligent" and that the verdict "exonerating Wallace and holding appellant responsible for this collision is absolutely contrary to and against the greater weight of the evidence in the case." We will not extend this opinion by reviewing the evidence given by defendants Wallace and the public service company, because it is not necessary to do so in order to decide this point. It is sufficient to say that evidence was adduced by appellant which conflicted with that of plaintiff on the question whether the stop was sudden. The question of resolving the conflicting evidence was for the jury and an appellate court cannot interfere with the jury's verdict by weighing the evidence. What was said in Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S.W.2d 654, is apropos here. In that case a passenger sued the streetcar company and Morgan Hauling & Express Company for injuries received by reason of a collision between the streetcar and the Morgan truck. The Morgan company won before the jury. The court said, 59 S.W.2d at page 656: "The jury found against defendant on its only defense * *. *543 The evidence was conflicting, and such is the province of the jury. The jury might well have found against both defendants, but plaintiff, who alone can complain of that, does not do so."
Appellant next urges that error arose out of this situation: While counsel for defendant Wallace was cross-examining Louise Kunz, a passenger on the bus who was called on behalf of the public service company, he inquired with reference to the bus driver taking the names of the passengers after the accident, whereupon counsel for the public service company stated to the court that he wanted the jury to understand that the names of every witness secured by the operator "are available to all parties in this case. If Mr. Hartman (counsel for Wallace) is trying to infer we are hiding witnesses from him, he has an opportunity to get the names of every witness." (Parentheses ours.) The record shows that Mr. Hartman then said "Why, are you hiding some of them?" Counsel for plaintiff immediately objected to the "wrangling between counsel and the extra judicial comments being made", which objection was sustained. The witness went on to testify that the operator took the names of all the passengers on the bus and estimated that there were between 10 and 15 passengers. (Incidentally, two of the passenger witnesses were produced by the public service company and none by the defendant Wallace.) In his closing argument counsel for defendant Wallace said with reference to whether the stop lights on the back of the bus were burning: "If they had been, don't forget that the Public Service Company would have had the witnesses there, with the facilities at their disposal. And then we have two other witnesses they put on, Mae Carouthers and Louise Kunz; and Mae Carouthers was on the bus and she also said that the police officers weren't there. Now, the funny thing about a case of this kindand I want to say that to youwhere, since they took all of these witnesses,that's what they were doing before they ever took care of the man that was hurtwhere are all of those witnesses?" Counsel for the public service company then objected, stating that every witness in the case was available to all parties in the case; that they could have obtained, and as a matter of fact did get, every one of the names. Thereupon counsel for defendant Wallace asked that the remark of counsel be stricken and the jury instructed to disregard it and counsel for the public service company asked that the jury be instructed to disregard the remark of Mr. Hartman. The court denied both requests and overruled the motion. Then counsel for the public service company moved that the remark of Mr. Hartman as to "where were these other witnesses be stricken, inasmuch as the witnesses were available to him, and the jury instructed to disregard it." This was overruled. Then plaintiff's counsel joined in the motion, on the ground that the names of bus passengers were equally available to counsel for defendant Wallace. The court denied plaintiff's motion. The court then told the jury that "there is no imputation to be cast against either or all of the parties to this suit for the lack of, or the production or non-production of witnesses. Any and all witnesses that are in the files of this court are available to be had by any person and their names and addresses are available to all parties." Thereupon, out of the hearing of the jury, counsel for the public service company objected to the making of that statement by the court and renewed its request that the remark of Mr. Hartman drawing adverse inferences from the failure of the company to produce other witnesses, be stricken from the record and the jury instructed to disregard it "inasmuch as each and every witness secured by the defendant Public Service Company, at the scene of the accident, was available to all parties." The court denied the motion.
Appellant claims that the argument was highly prejudicial, designed to create a belief on the part of the jury that the testimony of the other passenger witnesses not called would have been unfavorable to the public service company, and claims that it was prejudicial error under the ruling of Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506. Respondent claims that if the argument constituted error *544 that error was cured by the action of the trial court in admonishing the jury that no inference was to be drawn against anyone for the production or non-production of witnesses; that the trial court properly exercised its discretion regarding the propriety of the argument, was in a better position to judge its effect and whether harm occurred under all of the circumstances, and that no abuse of discretion was shown.
The argument of counsel raised the question as to the whereabouts of the bus passengers whose names the bus driver took at the scene of the accident, and sought to draw an inference unfavorable to appellant based on the non-production of the passengers as witnesses. Under the Belding case, supra, the witnesses were equally available to both defendants and under that case and Atkinson v. United Rys. Co., 286 Mo. 634, 228 S.W. 483, the argument constituted reversible error, unless the error was thereafter cured by the action of the court. When the objection to the argument was made the court apparently at first took the position that no error had occurred, because the court overruled appellant's objection, denied appellant's motion to instruct the jury to disregard the remark, and overruled appellant's subsequent motion (joined in by counsel for plaintiff) to strike the remark and to instruct the jury to disregard it. At that juncture the court seemingly changed its mind, and, concluding that no unfavorable inference could be drawn and that the names of the passengers were equally available to the parties, took a step in the right direction by admonishing the jury that there is no imputation to be cast against any party for the non-production of witnesses and that the names and addresses of all witnesses that are in the files of the court are available to all parties. The learned trial court was aware of the situation, knew that the remark was improper and required correction and sought to correct it. We do not believe, however, that the action of the trial court was sufficient to cure the harm to appellant resulting from the improper remark of counsel. At the end of the whole colloquy between court and counsel the remark was still before the jury. The jury never was instructed to disregard it nor was it stricken by the court. Had these precautions been taken it is likely that appellant would have suffered no injury. In Bolles v. Kansas City Southern R. Co., 163 Mo.App. 697, 147 S.W. 497, after an improper argument the court ruled the statement improper, directed the jury not to consider it and the statement was thereupon withdrawn by the counsel who made the argument. In that situation the appellate court, being satisfied that no harm had resulted, refused to interfere with the judgment. And in Cullar v. Missouri, K. & T. Ry. Co., 84 Mo. App. 340, following an argument relating to the failure of defendant to call a certain party as a witness, the court reprimanded counsel and directed the jury not to heed the remarks and the appellate court ruled that the action of the trial court was sufficient.
But where, as here, the objections were overruled, the court refused to strike the offensive argument and the jury was not instructed to disregard it, the error was not cured by the statement of the court, nor would it have been cured by anything short of an expression of disapproval sufficiently emphatic "as to destroy any impressions which may have resulted from * * * them." Rice, Stix & Co. v. Sally, 176 Mo. 107, loc. cit. 148, 75 S.W. 398, loc. cit. 410. See also Killoren v. Dunn, 68 Mo. App. 212, loc. cit. 218; and Williams v. Columbia Taxicab Co., Mo.App., 241 S.W. 970, loc. cit. 973. It has been held that the sustaining of an objection to the impropriety of such an argument is insufficient where the prejudiced party also asked for the discharge of the jury; that in addition to the sustaining of the objection the court should have explained the situation, directed the jury to disregard what counsel had said and administered a severe reprimand to counsel for his unwarranted statements. Hankins v. St. Louis-San Francisco R. Co., Mo.App., 31 S.W.2d 596, loc. cit. 600. And in Pledge v. Griffith, 199 Mo.App. 303, 202 S.W. 460, we held that the mere sustaining of an objection to an improper argument does not cure the error where the court, although requested, *545 fails to go further and reprimand counsel, require that the remarks be withdrawn and instruct the jury to disregard the same.
Plaintiff, however, claims that he should not be required to give up a favorable judgment because of an error committed by another party to the action where plaintiff neither made nor provoked the error but on the contrary lodged his objection to, and joined in the motion to strike, the remarks of counsel; that the improper argument was inimical to plaintiff's best interests because the adverse inference could be drawn not only against the public service company but also against plaintiff; that to take plaintiff's judgment away would penalize one who could not possibly have received any benefit from the argument; that plaintiff is in the position of an innocent bystander.
It is true that ordinarily one defendant in a tort action cannot complain of error committed during the trial in favor of a co-defendant. Nevins v. Solomon and Finn, 235 Mo.App. 967, 139 S.W.2d 1109, loc. cit. 1112, 1113; Biggs v. Cross-white, 240 Mo.App. 1171, 225 S.W.2d 514, loc. cit. 520. That question usually arises upon an assignment of error by one defendant that the court erred in the giving of an instruction on behalf of a co-defendant. It is held, however, that the question can be raised where the instruction given at the request of a co-defendant affects the question of the appealing defendant's liability to the plaintiff and prejudices his interests. Mollman v. St. Louis Public Service Co., Mo.App., 192 S.W.2d 618; Kelly v. Laclede Real Estate & Investment Co., 348 Mo. 407, 155 S.W.2d 90, 138 A.L.R. 1065; State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 S.W.2d 836; Berry v. Kansas City Public Service Co., 341 Mo. 658, 108 S.W.2d 98; Grimes v. Red Line Service, 337 Mo. 743, 85 S.W.2d 767; Gabelman v. Bolt, Mo.App., 68 S.W.2d 909; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S.W. 2d 559; Story v. People's Motorbus Co. of St. Louis, 327 Mo. 719, 37 S.W.2d 898.
As we said in Nevins v. Solomon and Finn, supra, 139 S.W.2d loc. cit. 1113: "In other words a plaintiff cannot be permitted to hold a judgment which is the result of a prejudicial error as between the two defendants. Stated in another way, the rule is that an error in favor of one defendant must not be such as to prejudice the other defendant's case before the jury, otherwise the plaintiff though not having invited the error has secured an unfair advantage over one of the defendants, and the judgment cannot stand."
The reason for the rule allowing one defendant to take advantage of error in the giving of erroneous instructions on behalf of a co-defendant is equally applicable when the court fails to erase the effect of an improper argument made by a co-defendant, where the argument adversly affects and prejudices the appealing defendant's case before the jury.
Appellant further contends that the court erred in orally instructing the jury with reference to the improper argument, basing its argument on the proposition that instructions to the jury must be in writing. However, as we held in Barber v. American Car & Foundry Co., Mo.App., 14 S.W. 2d 478, the statute requiring jury instructions to be in writing has no application to the argument of counsel and the necessary and proper rulings of the court made on objections thereto, so that this assignment is ruled against appellant.
In view of the fact that the judgment must be reversed because of the improper argument of counsel there is no necessity of considering the question whether the verdict is excessive.
For the reason given the judgment should be reversed and the cause remanded for a new trial on the issues arising between plaintiff and defendant St. Louis Public Service Company. In the meantime the trial court should hold in abeyance the verdict in favor of defendant Carl Wallace. Upon the determination of the issues between plaintiff and defendant St. Louis Public Service Company on retrial, the trial court should then enter final judgment disposing of all parties and all issues. The Commissioner so recommends.
*546 PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, reversed and the cause remanded for further proceedings consistent with the foregoing opinion.
BENNICK, P. J., and ANDERSON and RUDDY, JJ., concur.